SPRING HILL CEMETERY, INC., COMPLAINANT, APPELLEE, *v.* DICK LINDSEY, CLERK *et al.*, DEFENDANTS, APPELLANTS.

(*Nashville,* December Term, 1931.)

Opinion filed April 4, 1931.

Price, Schlater & Price, for complainant, appellee.

W. F. Barry, Jr. and Roy H. Beeler, for defendants, appellants.

Mr. Justice Cook delivered the opinion of the Court.

The bill was filed by Spring Hill Cemetery, Inc., under chapter 142, Acts of 1875, and E. L. Morris, a stockholder, director and officer of the corporation, under the declaratory judgments law. The prayer of the bill was for a decree declaring chapter 75, Acts of 1927, void.

It is charged that the statute which imposes certain duties and obligations on cemetery companies chartered under the Act of 1875 and upon their officers, directors and stockholders, is unconstitutional. That the bill, as amended, presents a case for a declaratory decree is admitted by respondents. See *Perry v. City,* 160 Tenn., 102, 22 S. W. (2d), 359.

We have considered the Act challenged by complainant's bill. It does not, as charged in the bill, violate Article II, section 17, of the Constitution. The body of the Act contains one subject—the regulation of cemetery corporations—and the subject is expressed in the caption. The object of the Act was to prescribe measures and remedies for the enforcement of duties imposed upon cemetery corporations organized under chapter 142, Acts of 1875, and its provisions relate directly or indirectly to that general subject.

The fact that the remedy extends only to cemetery corporations organized for profit under section 9 of the Act of 1875 does not render the Act in question void as class legislation contrary to Article I, section 8, and Article XI, section 8, of the Constitution.

The Act of 1927 applies with equal force to all cemetery companies organized under charters granted by the State under the general corporation law of 1875, and prescribes remedies for the enforcement of obligations voluntarily assumed by the corporation when the charter was accepted, from which its powers are derived.

The complainant Spring Hill Cemetery was organized under the Act of 1875 referred to. Section 9 of that Act, embodied in the charter, and which, otherwise, would be read into it (*Anderson-Dulin-Varnell Co.* v. *Williams*, 148 Tenn., 388, 255 S. W., 597) contains this provision:

"It shall be the duty of the corporation to set apart twenty-five (25) per cent of all lots sold, to be denominated an Improvement Fund, and the same to accumulate until the interest amounts to a sum sufficient to keep in order the entire grounds used as a cemetery, and any person, or the descendants of any person, who has bought a lot, shall have the right to look after and see to the preservation of said fund, and the proper application of the interest. Until the interest on the fund accumulated as aforesaid, is sufficient for the purpose aforesaid, the corporation is bound to keep the grounds in order out of the remaining three-fourths of the proceeds of the lots."

The declared purpose of chapter 75 of the Acts of 1927 was to require cemetery corporations . . . to at all times carry a sufficient permanent improvement fund to keep up and beautify the cemeteries without commercializing their operation. The provisions of the Act of 1927, other than sections 2, 7, 9 and 10, refer to the obligation originally imposed by the above quoted provision of the Act of 1875, which obligation was assumed by the corporation and under which it was onerated with the duty of setting apart 25% from the sale of lots to the permanent improvement fund, and the latter Act prescribes measures and remedies for the enforcement of that duty. As related to such duties and obligations connected with transactions subsequent to the passage of the Act of 1927, the last enacted law would be valid and enforceable.

The Spring Hill Cemetery was organized in 1881, nearly a half century before the Act of 1927 was passed, under the original Act which made it obligatory upon the corporation to set up the improvement fund. Lot owners and their descendants were authorized by the Act of 1875 to enforce that requirement. If it was observed and enforced the fund would be now in existence and under control of the corporate treasurer. If the 25% derived from the sale of lots prior to the passage of the Act of 1927 was not set apart by antecedent officers and directors of the corporation, the present officers and directors could not be penalized by a subsequent Act for refusing to make up the deficit, nor could the legislature lawfully declare it to be a personal liability against them. But that was apparently the object of the legislature expressed through sections 2, 7, 9 and 10 of chapter 75, Acts of 1927, quoted as follows:

"Sec. 2. That each cemetery corporation already chartered under the laws of the State of Tennessee prior to the passage of this Act and since 1875, and now doing business in Tennessee, shall now be required to set up and maintain a permanent Improvement Fund equal in amount to twenty-five per cent of the gross sum already paid to such cemetery corporation by the purchasers of lots in said cemetery, which Improvement Fund shall be invested and the interest thereon used and expended as provided in Section 1 hereof, this requirement already being in effect under the provisions of Section 9 of Chapter 142 of the Acts of the General Assembly of the State of Tennessee for the year 1875.

"Sec. 7. That the officers of such cemetery corporation, and the directors thereof, shall be guilty of a misdemeanor if they fail to set up the twenty-five per cent

permanent Improvement Fund as herein provided, and upon conviction they shall each be fined not less than One Hundred Dollars or more than Five Hundred Dollars, and they may all be jointly indicted in the same indictment. In addition they shall be jointly liable at the suit of a lot-owner, or descendant or relative of a lot-owner, for the difference between the amount of the permanent Improvement Fund as set up by the corporation and what it should be if set up, under the terms of this Act, plus interest thereon from the date said fund should have been set up.

"Sec. 9. That any cemetery corporation which fails to set up and maintain the permanent Improvement Fund as herein provided, or which fails to make a report as provided, shall forfeit its charter and its right to do business in the State. Such Charter may be revoked by a Bill filed in the name of the State against the corporation in the Chancery Court of the County where the cemetery is located, and may be brought in the name of the State on relation of the Attorney-General of the State or the District Attorney-General of the County where the cemetery is located. If the permanent Improvement Fund has not been set up as herein required, the assets of the corporation may be seized and sold by the State under orders of the Court where the revocation of the Charter is sought to the extent necessary to provide said Improvement Fund and set the same up. And if the Court revokes the charter, the whole corporate property may be ordered sold after the Improvement Fund has been set up, so that the puchaser of the cemetery may continue to operate the same and maintain it under the terms of this Act.

"Sec. 10. That the State is authorized to recover from stockholders, for the use of the corporation dividends illegally paid hereunder; and also the State, for the use of the corporation, is authorized to recover from the officers and directors of the corporation, at any time, an amount sufficient to bring the permanent Improvement Fund up to the twenty-five per cent required by this Act, together with reasonable attorney's fees for the attorneys handling such suit, to be fixed and adjudged by the court trying the case."

The object expressed in the foregoing sections to penalize the officers, directors and stockholders for the acts and omissions of their predecessors, and to expropriate the substance of officers, directors and stockholders to corporate uses violates Article I, section 20, and Article I, section 8, of the Constitution. *Tractor Co.* v. *McMillin*, 111 Tenn., 521, 77 S. W., 665; *State* v. *Burnett*, 53 Tenn. (6 Heisk.), 186, 6 R. C. L., sections 290-291, p. 303, 12 C. J., section 781, p. 1086.

It cannot be said that the legislature would have passed the Act with the invalid sections referred to omitted, so it cannot be saved by an application of the doctrine of elision. The decree of the chancellor must therefore be affirmed.