BIGGS *et al. v.* BEELER *et al.*

(*Knoxville,* September Term, 1942.)

Opinion filed July 3, 1943.

On Petition for Rehearing September 9, 1943.

R. A. Davis, of Athens, and R. R. Webb, of Etowah, for complainants.

William F. Barry, Solicitor General, and Harry Phillips, Assistant Attorney-General (Roy H. Beeler, Attorney-General, of counsel), for defendants Roy H. Beeler, *et al.*

Carlyle S. Littleton, of Chattanooga, and C. C. Guinn, of Benton, for defendant Henry Crox, Election Commissioner. (Petitioner for rehearing.)

HARRY J. SCHAEFFER, of Chattanooga, for defendant Polk County and County Trustee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The constitutionality of Chapters 37 and 38, Public Acts of 1943, is challenged on various grounds. Chapter 37 repeals Code Sections 1082, as amended, 1558 and 1559, which levy an annual poll tax of one dollar for school purposes on every inhabitant between the ages of twenty-one and fifty years, with certain exceptions based on incapacity, and provide for collection thereof by the County Trustee.

The second Act, Chapter 38, prescribes certain qualifications for voters, provides for state-wide registration of voters and removal of requirements of payment of a poll tax as a prerequisite to voting, and repeals existing laws relating thereto.

Complainants are taxpayers, owners of real and personal property, only one of whom is shown to be liable for a poll tax, whose burden would be increased by the repeal, by Chapter 37, of Statutes which levy such tax, and by the added expense of administration of the registration regulations enacted by Chapter 38. No question is raised in the pleadings or briefs as to the right of complainants to bring this suit, but it is proper to remark that the Courts take knowledge of the fact that this poll tax is levied on many who own no property and pay no taxes otherwise, and whom its abolishment would operate to exempt from taxation altogether, necessitating an increase of taxes from other sources, including the property of complainants, to meet the deficit thus created. They pray for an injunction restraining execution of

the provisions of Chapter 38 and for a declaratory judgment as to the validity of both Acts alleged to contravene certain constitutional mandates set forth in named sections of the constitution of 1870. The defendants are State and County officials charged with the duty of enforcing said Chapter 38.

We consider first the validity of Chapter 37—first in order of passage, and because, by Section 26 of Chapter 38, it is expressly provided that, "the operation of this Act shall be suspended at all times said Code Section [1082] is in effect and operation," etc. In other words, should Chapter 37 be held invalid and the repeal thereby provided for inoperative, Chapter 38 automatically becomes suspended. The operation of this second Act is thus conditioned upon the validity of the first.

As has been seen, Chapter 37 deals only with the requirement that a poll tax shall be paid for school purposes. In considering its validity we are not, therefore, concerned with the requirement, sometimes confused with it, of the pre-payment of a poll tax as a condition of voting.

Overruling a demurrer, the Chancellor held that this legislation contravened a positive, mandatory provision of the Constitution. We quote from Section 28 of Article 2 of the Constitution of 1870, the following:

"All male citizens of this State over the age of twenty-one years, except such persons as may be exempted by law on account of age or other infirmity, shall be liable to a poll tax of not less than fifty cents, nor more than one dollar per annum."

Appealing, appellants frankly concede that this provision of the fundamental law is mandatory, as is likewise that part of Section I of Article IV which provides that

all males shall pay a poll tax, but say that they are not self-executing, to which proposition their exhaustive brief is mainly directed; that the execution of this mandate is for the Legislature, and that the Courts are without power to enforce its execution by the exercise of control over that body; also, that having the power delegated to it to execute the constitutional mandate, it has the reserved power to reconsider and by repeal undo that which it has done in compliance with this mandate.

This we conceive to be the determinative question: When the Legislature, in execution of a trust conferred on it by the Constitution, has, by appropriate legislation, executed that trust and put into operation and effect a constitutional mandate, may the Legislature, at a subsequent session, revoke and nullify that which it had done?

Strangely enough, learned counsel confess failure to find any reported case directly in point; any case in which the Courts of any state have had occasion to consider the power of a Legislature, the creature of the Constitution, to strike down a constitutional mandate which the Legislature, in proper obedience to such mandate, and in exercise of the power vested in it by the Constitution, has put in execution and effect; any case where, after this mandate has been for many years a recognized and enforced part of the body of the law, a repeal has been attempted of such existing law, thereby nullifying the constitutional requirement. Having, therefore, presented to us a case without direct precedent, we turn for guidance to principle and reason.

This historical comment is pertinent: The Constitution of 1834 called for a tax on polls, reading: "A tax on white polls shall be laid, in such manner and of such an amount as may be prescribed by law," Section 28, Article

II. The Code of 1858, sec. 553, fixed the tax at twenty-five cents—an amount equal at the time in purchasing value to the one dollar later fixed. The Constitution of 1870, as has been seen, commanded an annual levy of "not less than fifty cents nor more than one dollar."

At its first session following the adoption of the Constitution of 1870 now in force, in express recognition of this mandate of the Constitution, the Legislature fixed the amount at one dollar, the age limitations at twenty-one and fifty years, and provided exemptions based on physical incapacity. They thus grafted the constitutional mandate into the statute, and rendered it operative and enforceable. The Code of 1932 incorporated this law, with amendments extending its application to "every inhabitant" (subject, as theretofore, to limitations as to age and exemptions) and providing added means of enforcing collection, into the Code Sections which Chapter 37, Acts of 1943 purports to repeal.

Thus for more than one hundred years, by constitutional mandate and executing legislative enactment, collection of a poll tax for purposes of public education, conceived by our forefathers to be necessary and just, has been a part of the organic law of this State. Has not the Court the authority and the sworn duty to declare void this Act of 1943 which affirmatively sets aside and nullifies this constitutionally commanded and legislatively approved law?

In these days, when many men and some Courts treat lightly the constitutional limitations and commands our forefathers thought wise to engraft upon the body of our law, it is well to recall such expressions as the following from the opinion of a former Chief Justice of this Court:

"Constitutions are expressions of the sovereign will of the people, the fountain of all power and authority. The several departments of the government are created and vested with their authority by them, and they must exercise it within the limits and in the manner which they direct. The provisions of these solemn instruments are not advisory, or mere suggestions of what would be fit and proper, but commands which must be obeyed. . . . The supremacy and permanency of republics depend upon the maintenance of the fundamental law, in its integrity, as written in Constitutions adopted by the people; and it is the solemn duty of all those temporarily vested with power, in all departments of the state, to do this. The necessities of a particular case will not justify a departure from the organic law. It is by such insidious process and gradual encroachment that constitutional limitations and government by the people are weakened and eventually destroyed." *State ex rel.* v. *Burrow*, 119 Tenn., 376, 104 S. W., 526, 527, 14 Ann. Cas., 809.

It must never be forgotten that the Legislature, like the Court, is subject to the mandates of the Constitution. Mandatory provisions are imperative commands that must be obeyed, and may not be disregarded or repudiated. A wide distinction exists between a mandatory non-self-executing provision of a constitution and one that is directory or permissive only. The Legislature is left free to execute and act on the latter, or not, at its pleasure, and, it perhaps has the power to repeal and revoke its execution thereof by such action as it may from time to time elect to take; but a mandatory non-self-executing constitutional provision delegates to the Legislature the execution of a power coupled with a command which, it is true, the Legislature may disregard

and the Courts are without authority to enforce performance of by affirmative decree. But, when the constitutional command has been carried into execution, and incorporated into operative law, the Courts, which may not say shall, have the authority and solemn obligation to say shall not. The power of the Courts to declare void and restrain an affirmative act which contravenes and nullifies the higher law is beyond question in this jurisdiction.

The only answer offered to the view above indicated is the invoking of application of the general rule that a succeeding Legislature may revoke by repeal, that is, "abrogate or destroy" (2 Bouvier's Law Dict., Rawle's Third Rev., p. 2887), the act of a former. We recognize this to be the general rule, but we here deal with an exception, which we conceive to be sound in principle and compelled by a controlling constitutional mandate. We look through form to substance. In form this Act repeals former acts of the Legislature, but who can deny that in substance, in effect, it renders inoperative a constitutional command, to the extent, at least, of a tax of fifty cents on "all male citizens of this State over the age of twenty-one years, except such persons as may be exempted by law on account of age or other infirmity." Article II, Section 28. To hold otherwise, as well expressed by a member of this Court (in conference touching the instant case), "would make this constitutional provision meaningless, while appellants freely concede that it is mandatory. It can hardly be conceived that the framers of the Constitution of 1870 would engage in such meaningless labors." And, as well said by another, "I certainly do not feel that this Court is precluded from protecting the public revenue and the educational funds

of the State, when to do so merely necessitates upholding the Constitution and its clear mandate." In *Nashville, C. & St. L. Ry.* v. *Marshall County,* 161 Tenn., 236, at page 239, 30 S. W. (2d), 268, at page 270, this Court said: "Every new General Assembly is a law unto itself, *within constitutional limitations only.*" We italicize language most pertinent here.

Conceding, as we have done for instant purposes, although plausible argument may be made to the contrary, that the instant mandate is not effectively self-executing, and that, as said by Cooley (Constitutional Limitations, 7th Ed., 121), "Rights in such a case may lie dormant until Statutes shall provide for them," or, as said elsewhere, "remain inoperative until rendered effective by supplemental legislation," (16 C. J. S. Constitutional Law, sec. 48, p. 100 citing *Kiernan* v. *Portland,* 57 Or., 454, 111 P., 379, 112 P., 402, 37 L. R. A. (N. S.), 332, 12 C. J. 720, note 57), or, as expressed by this Court in *Friedman* v. *Mathes,* 55 Tenn., 488, at page 498, they are "dormant and quiescent until some statute brings them into life and operation," we have here a case where a constitutional mandate, if originally "dormant" and "inoperative," has had vitality breathed into it, has been "rendered effective by supplemental legislation," is now a live, active, operative thing, and to kill and destroy it requires affirmative action, which may be taken only by its creator through constitutional amendment, or convention, not by either the Legislature or the Courts.

This constitutional mandate has been so "welded into intimate and permanent union" (Webster) with the statute that the two have become one and indivisible, and the statute may not now be divorced and destroyed. The

necessary effect would be to nullify and defeat operation of the constitutional mandate also.

It is true that, in so far as these Code sections extend the tax beyond "all *male* citizens," as provided in the Constitution, this repeal does not violate the express constitutional mandate, but we find no indication of an intention on the part of the Legislature to have this repealing Act apply to women, if the Act is held inoperative as to males. We think it obvious that the legislative intent was to relieve all alike, not a portion only of those liable for this tax. No intention to effect a discrimination between the sexes can be implied. Therefore, being void in an essential part, the repealing act fails all together. Elision may not therefore be applied. *Daniel* v. *Larsen,* 157 Tenn., 690, at 694, 12 S. W. (2d), 386; *Spring Hill Cemetery* v. *Lindsey,* 162 Tenn., 420, at 426, 37 S. W. (2d), 111.

For the reasons indicated, Chapter 37 must be declared invalid, contravening and nullifying as it does, an express mandate of the Constitution, "For the will of the people, as declared in the Constitution, is the final law, and the will of the Legislature is only law when it is in harmony with, or at least is not opposed to, that controlling instrument which governs the legislative body equally with the private citizen." Quoting and approving these words from Judge Cooley, this Court said in *State* v. *McCann,* 72 Tenn., at page 11, and repeated in *Webb* v. *Carter,* 129 Tenn., 182, at page 204, 165 S. W., 426, at page 432, "These are words of wisdom from the pen of the ablest constitutional Jurist now in our midst, and well deserve to be pondered by those whose duty it is to administer the law, and enforce its mandates, especially in the court of last resort."

And, as said by Mr. Justice Cook in *Peay* v. *Nolan,* 157 Tenn., 222, at page 229, 7 S. W. (2d), 815, at page 816, 60 A. L. R., 408, citing many authorities, ''Every act violative of the intent and meaning of the Constitution is void, and the judicial department, . . . is empowered to so declare.''

In conclusion, we add this word of reminder: If it be the will of the sovereign people that the time has come to change these or other provisions of the organic law, the way is open, as already suggested, by methods prescribed by that law itself. But such changes, however desirable they may appear to be, must be made in orderly and authorized manner. Until then, neither the Legislature nor the Courts, sworn to observe the Constitution as written, may make or condone such changes.

As we endeavored to make plain in the outset, this Act, Chapter 37, with which we deal relates only to the poll or capitation tax, as such; neither it, nor what we now decide has to do with the exaction of payment of the tax as a condition of voting. That is dealt with in Chapter 38, which, as before stated, we do not reach, since by the express terms of Section 26 of that Act, its operation is conditioned on the validity of Chapter 37.

The decree of the Chancellor, in so far as it declares unconstitutional Chapter 37, is affirmed.

GREEN, C. J., and NEIL, J., dissent.

DISSENTING OPINION.

MR. CHIEF JUSTICE GREEN.

In disposing of this case the Court has applied some novel tests to chapter 37 of the Acts of 1943. The result reached is supported by no authority and I do not think it is sound in principle.

First, the Court entertains an assault by taxpayers upon a statute which relieves them of a burden. This overlooks the well-settled rule that one not adversely affected by a statute cannot question its validity. It does not seem to me that the possibility of increased taxation by some other statute following the repeal of this one is sufficient to take the case out of the rule.

The majority opinion proceeds on the theory that the poll tax provision of Section 28 of Article II of our Constitution is not self-executing but must, in order to be effective, be implemented by a legislative Act fixing the amount of the tax and methods for its collection.

If in the first instance the Legislature had refused to give force to the constitutional mandate and levy the poll tax, it is conceded that this Court could have done nothing to remedy the situation. Just what gives the Court the right to interfere if a subsequent Legislature refuses to heed the mandate is not apparent.

If a constitutional provision requires the support of a statute in order to operate, it cannot function when that support is withdrawn—when the statute is repealed. The Legislature has power to repeal any statute unless restrained by some limitation of the Constitution such as the prohibition against any law impairing the obligation of a contract. No such interdiction is suggested as applicable here.

When the Legislature passes a law which transgresses a constitutional prohibition the Court will not enforce the law because it conflicts with a higher law—the Constitution. When, however, the Legislature refuses to pass a law which the Constitution requires of it, no question of justiciable conflict of laws arises. It is merely a case of legislative dereliction which the Court is powerless to correct.

Stripped of its eloquence and ethics, the substance of the majority opinion is that obedience to a mandate of the Constitution by one Legislature introduces into that instrument a warrant to this Court to compel obedience to the mandate by a subsequent Legislature. But the Legislature cannot amend the Constitution nor can it bind future Legislatures.

I had supposed inasmuch as the Constitution only requires the levy of the poll tax upon "male citizens" that the repeal of the Act which levied the tax upon "every inhabitant" was certainly good in so far as it exonerated women. We are justified in believing that the legislative purpose being to repeal the tax *in toto*, if that was not permissible, was to repeal it in so far as it could within the Constitution.

In perpetuating the poll tax sections of the Code after they were repealed by the Legislature, I fear that the Court was too little mindful of Article II of our Constitution which divides the powers of government into three distinct departments, the legislative, executive and judicial, and adds that:

"No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

Mr. Justice Neil (dissenting).

Article II, section 28, of the Constitution is the section relating to the raising of revenue for proper maintenance of the state government. It provides for taxation of real, personal, and mixed property, excluding certain property held by religious, charitable, scientific, and educational institutions. There is to be found in the same article the provision "All male citizens of this State, over the age

of twenty-one years, except such persons as may be exempted by law on account of age or other infirmity, shall be liable to a poll tax of not less than fifty cents nor more than one dollar per annum.'' Article XI, section 12, of the Constitution of 1870, amending the Constitution of 1834, relating to education, provides:

''And the fund called the common school fund, and all the lands and proceeds thereof, dividends, stocks and other property of every description whatever, heretofore by law appropriated by the General Assembly of this State for the use of common schools, and all such as shall hereafter be appropriated, shall remain a *perpetual fund,* the principal of which shall never be diminished by Legislative appropriation; and the interest thereof shall be inviolably appropriated to the support and encouragement of common schools throughout the State, and for the equal benefit of all the people thereof; and no law shall be made authorizing said fund, or any part thereof, to be diverted to any other use than the support and encouragement of common schools. The State taxes derived hereafter from polls shall be appropriated to educational purposes, in such manner as the General Assembly shall, from time to time, direct by law.''

I am constrained to hold that these constitutional provisions, while mandatory, are not self-executing. Following the adoption of the Constitution, the Legislature in 1870 passed a poll tax law, Ch. 26. It was enacted for the sole purpose of raising revenue for school purposes. When the framers of the Constitution incorporated into the organic law the provision that voters shall be liable to pay a poll tax and that such tax shall remain inviolate as a separate fund for school purposes, it was considered a means of raising revenue. The Constitution does not set up any machinery for the collection of this tax, i. e.,

who is to assess it, or when, or by whom it shall be collected. Its collection, as well as the method of collection, was left to the Legislature. In *Southern Express Co.* v. *Patterson,* 122 Tenn., 279, 123 S. W., 353, it was held by this Court in an opinion prepared by Mr. Justice Shields that this section of the Constitution was not self-executing. If it is not, and the Legislature finds sources of revenue for school purposes otherwise than from poll taxes, as it has done, I think it may repeal the tax without doing violence to the State Constitution. No one can doubt that the Legislature has observed its sworn duty to provide adequate revenue for support of the state government, including proper maintenance of both elementary and high schools. The same Legislature (1943) that repealed the poll tax appropriated $10,568,000 for school purposes. It cannot therefore be seriously urged that the abandonment of the poll tax by the Legislature is subversive of constitutional government in Tennessee.

The majority opinion quotes at length a solemn admonition by a former Chief Justice of this Court regarding the necessity of preserving the Constitution. With this I find myself in full accord. But it has no relation whatever to the question now before us because in the instant case no citizen has been denied any constitutional right or privilege.

The point is made by counsel for appellee that the revenue derived from poll taxes must be set aside as part of a sacred fund and shall not be diverted to any other purpose; hence, the repeal of the tax is a violation of this constitutional provision. With all deference to counsel, I think this is a pure fiction. It is a well known fact that there has been no such fund in existence for more than fifty years. The Legislature has not thought of the poll

tax as a source of revenue for school purposes "*and set it aside as a perpetual fund*" for at least a generation.

Where constitutional provisions are not self-executing, as in the instant case, the courts are without power to put them into effect. And if statutes are enacted by the Legislature in pursuance of and in recognition of a sworn duty to uphold the Constitution and such statutes. are later repealed, leaving certain provisions unenforceable, there is nothing the courts can do about it._ The court is not the keeper of the conscience of the Legislature. We cannot substitute our own idea of moral responsibility for that of the Legislature; nor can the court by any process known to the law compel the Legislature to perform a plain duty that is imposed upon it by the Constitution. We are here faced with the incongruity, if not absolute absurdity, of being called upon to yield obedience, and compel obedience, to a statute that has been repealed and a constitutional provision that is admittedly not self-executing. Such a thing is unknown to the history of English and American jurisprudence. When this case was argued at the bar of this Court, counsel for both appellant and appellee were called upon to cite authority that supports such a contention. It was admitted that none could be found. There is such abundant authority to support the view herein expressed, as well as that of the Chief Justice, that I deem it unnecessary to cite cases.

ON PETITION TO REHEAR.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court on the petition to rehear.

A petition to rehear is presented by one of the defendants, H. A. Crox, as a member of the County Election Commission, challenging for the first time, the proposition asserted by complainants below, concurred in by all

parties on the hearing in this Court, and adopted in our opinion without dissent, that the provision in our Constitution for a poll tax is mandatory.

Frankly conceding that the petition violates our rules of practice and precedent procedure in now raising this issue, learned counsel earnestly argue that an exception should be made, in view of the public interest involved; that the Court is thereby justified in overlooking ''inadvertent'' admissions and concessions, made by ''oversight,'' and reopening the case for consideration of this question.

But, if we should disregard our rules and the motion of respondents to dismiss this petition, based thereon and on certain other grounds, and consider the petition, we are not of opinion that there was error in treating this provision as mandatory.

Petitioner's specific insistence is that too much emphasis has been given the use of the word ''shall'' and that the true import of the word ''liable'' has been overlooked. Selected definitions of ''liable'' and of ''liability'' are quoted and relied on to support an argument that the intention was to declare a contingent liability only, for this tax, to become fixed at the will and election of the Legislature; that merely authority to levy such a tax is conferred, without requiring or commanding such a levy. Query: If this is all that was intended, then, since the Legislature has the inherent power to tax (*Vertrees* v. *State Board,* 141 Tenn., 645, at page 658, 214 S. W., 737, at page 740), did not the constitutional framers do a wholly useless thing in providing therefor?

While we found it unnecessary to discuss this question, in view of the general concession and agreement above noted, we were not unmindful of the line of argument

now advanced. The definitions and text books and the decision discussions of these terms, were examined and the conclusion reached that, in its context, the language as a whole clearly indicated an intention to lay down a mandatory poll tax requirement, with nothing left to the Legislature except the enactment of supplementary details of collection and enforcement. But for the delegation of these details the tax provision for the tax would have been fully self executing.

Petitioner quotes from Webster (and other lexicographers) a definition of ''liable,'' as follows: ''Exposed to a certain contingency or casualty, more or less probable.'' The argument is, therefore, that the use of this word does not signify ''a perfected or fixed legal liability, but rather a condition out of which legal liability may arise.'' But, petitioner has passed by the first, or primary, definition given by Webster and quotes and relies on the secondary meaning. The definition reads: ''Liable: 1. Bound or obligated in law or equity; responsible; answerable, etc. 2. Exposed to a certain contingency or casualty,'' etc.

It is as though the Constitution had read, shall be ''bound or obligated in law'' to pay a poll tax, etc. According to Bouvier's law dictionary, one who is ''liable'' is ''bound in law and justice to do something which may be enforced by action,'' citing, *McElfresh* v. *Kirkendall*, 36 Iowa, 224, 226; *Wood* v. *Currey*, 57 Cal., 208, 209; *Joslin* v. *Car Spring Co.*, 36 N. J. L., 141, 145. This is the definition adopted by this Court in the opinion in *Choate* v. *Quinichett*, 59 Tenn., 427, at page 432.

But this question is not now an open one, not only because of the concessions and conclusions in the instant case, but because this Court has heretofore foreclosed

the question in former decisions. For example, in his able opinion in the leading and carefully considered case of *Vertrees* v. *State Board of Elections,* 141 Tenn., at page 660, 214 S. W., at page 741, Mr. Justice GREEN, now Chief Justice, referring to this constitutional provision, Art. 2, Section 28 says: "That instrument *mandatorily declares* that all male citizens shall be liable to a poll tax." (Italics ours.)

This construction of this provision is in accord with expressions in our earlier cases and is sustained by the general rule that use of the word "shall" stamps a constitutional provision as mandatory. 11 Am. Jur., 686, 687; 16 C. J. S., Constitutional Law, sec. 61, p. 120.

A strong presumption supports such construction. Discussing the construction to be given constitutional provisions, this Court said in *State ex rel.* v. *Burrow,* 119 Tenn., 376, at page 381, 104 S. W., 526, at page 527, 14 Ann. Cas., 809: "The provisions of these solemn instruments are not advisory, or mere suggestions of what would be fit and proper, but commands which must be obeyed. Presumably they are all mandatory. Certainly no provision will be construed otherwise, unless the intention that it shall be unmistakably and conclusively appears upon its face."

A note to the text in C. J. S., above cited, quotes from our case of *Scopes* v. *State,* 154 Tenn., 105, 289 S. W., 363, 366, 53 A. L. R., 821, the statement that the "Court is loath to say that any language of the Constitution is merely directory." And in that same case Chief Justice GREEN, elsewhere in his opinion, said that, while "in no case can the court directly compel the Legislature to perform its duty," i. e. carry out a mandate of the Constitution, "in a plain case the court can prevent the

Legislature from transgressing its duty under the Constitution by declaring ineffective such a legislative act." This is the principle upon which the majority opinion in the instant case proceeds in declaring the legislative act before it, Chap. 37, Acts of 1943, "ineffective," upon the premise we adopted and now reaffirm, that this constitutional provision, Art. 2, sec. 28, that "all male citizens of this State over the age of twenty-one years," with the exceptions stated, "shall be liable to a poll tax," etc., is clearly mandatory. To transgress is to violate, or offend against. The majority opinion holds that the attempted repeal of statutes passed in compliance with this constitutional mandate, in order to more fully effectuate it, transgresses, offends against this mandate and is, therefore, violative of it and ineffective.

While it is true, as said in our opinion, that there is no direct decision authority for holding ineffective an act of the Legislature in the form of a repeal on the ground that it in effect transgresses and nullifies a constitutional mandate, no such question having heretofore arisen, it is equally true that no authority has been produced to the contrary; and we have found no pronouncement of the power of a Legislature to repeal an act of a former Legislature unaccompanied by the proviso that such power is subject to constitutional limitations and restrictions, either express or implied.

It is not inappropriate just here to refer to a contribution to this subject by that distinguished constitutional lawyer and teacher, Judge THOMAS H. MALONE, who was for years a leader of the Tennessee Bar and who sat repeatedly by appointment on this Court, published shortly before his recent lamented death, in which he reviewed our constitutional poll tax provisions and not only

pronounced them plainly "mandatory," but declared that "no Legislature, nor series of Legislatures, can 'abolish' the poll tax," that "to do this a constitutional amendment is required." This is an extrajudicial opinion entitled to much weight.

 It may be added that, beginning with the leading case of *Marbury* v. *Madison,* 1 Cranch., 137, 154, 2 L. Ed., 60, in which Chief Justice MARSHALL sailed an uncharted sea, and, citing no authority, relied alone on principle and reason, our Courts have not hesitated to strike down legislative action which disregarded, transgressed and defeated, either directly or indirectly, mandates of the organic and fundamental law laid down in the Constitution. This in the performance of their sworn duty, undeterred by clamor or criticism. It was in his opinion in this case that the great Chief Justice first announced the principle of the supremacy of written constitutions over legislative acts, affirming, as expressed by Alexander Hamilton, that "the Constitution ought to be preferred to the statute, the intention of the people to the intention of their agents," and declaring that there is no escape from the conclusion that "a law repugnant to the Constitution is void."

The petition is dismissed, all concurring in this result.

PREWITT and GAILOR, JJ., concur in the opinion dismissing petition to rehear.

GREEN, C. J., and NEIL, J., concurred in dismissing the petition to rehear.