Washington County Election Commission

*v.*

City of Johnson City et al

350 S. W. 2d 601.

(*Knoxville,* September Term, 1961.)

Opinion filed October 20, 1961.

KENT HERRIN, HERRIN & SHERWOOD, Johnson City, PAUL J. SHERWOOD, JOHN F. WASHINGTON, Johnson City, of counsel, for Washington County Election Commission.

W. L. PRICE, Johnson City, for Johnson City.

B. B. SNIPES, Johnson City, for George White and Homer L. Pease.

ALLISON B. HUMPHREYS, Solicitor General, Nashville, for Attorney General George F. McCanless.

Mr. Justice Felts delivered the opinion of the Court.

This is a bill filed under the Declaratory Judgments Act (T.C.A. sec. 23-1101 et seq.) by the Washington County Election Commission against the City of Johnson City (the City) and others, seeking a construction of a provision of the Constitution of Tennessee (Art. 11, sec. 9), being a part of what is known as "The Home Rule Amendments," as follows:

"A charter or amendment may be proposed by ordinance of any home rule municipality, by a charter commission provided for by Act of the General Assembly and elected by the qualified voters of a home rule municipality voting thereon or, in the absence of such act of the General Assembly, by a charter commission of seven (7) members, chosen at large not more often than once in two (2) years, in a municipal election pursuant to petition for such election signed by qualified voters of a home rule municipality not less in number than ten (10%) per cent of those voting in the then most recent general municipal election."

The bill alleged that the City was a home rule municipality, having taken the requisite steps to become such under our Constitution (Art. 11, sec. 9); and that complainant had received a petition, signed by the requisite number of qualified voters of the City, to call an election to choose seven members of the charter commission under the provision above quoted, and had announced its call for such an election.

It was further alleged that the legality of this proposed election had been questioned, because there has been no judicial construction of this provision and because it does not set out the qualifications of such commission-

ers, their term of office, remuneration, etc.; and that the Board of City Commissioners had, by resolution, requested complainant to file a bill to have these matters determined.

It was averred that this provision was self-executing and valid; but that there were doubts as to the proper construction of it and as to the above matters; and upon the theory that a constitutional question was involved, George F. McCanless, Attorney General of Tennessee, was made a defendant. Also, George White and others, as representing the signers of the petition as a class, were joined as defendants. There were appropriate prayers for relief.

Answers were filed by defendants admitting the facts averred in the bill; and the City filed a cross-bill denying that this constitutional provision is self-executing and averring that it cannot become effective without the aid of implementing legislation.

In the alternative, the City asked the Court, if it held this provision self-executing, then to determine the qualifications of candidates for the charter commission; and if such commissioners were chosen, when and where they should meet, to whom they should report, and what, if anything, could be paid them for compensation and expenses, and by whom it was to be paid. The City asked an injunction restraining the holding of an election until these matters should be finally determined.

Such an injunction was granted, and the case was heard upon the bill and answers and the cross-bill and answers thereto. The Chancellor, in a well-considered opinion, held that the constitutional provision above quoted is self-executing; and that the Board of City

Commissioners may, by ordinance, fix the qualifications of members of the charter commission and provide for payment of their compensation and expenses.

The City appealed to this Court, and insists that the Chancellor erred in holding that this provision is self-executing, without the aid of any legislation; in holding that the Board of Commissioners of the City may, by ordinance, fix the qualifications of the charter commissioners; and in refusing to make a declaration as to when and where such commissioners, if elected, should meet, and how and to whom they should make their report.

As we have seen, the constitutional provision above quoted is part of the provisions added to Article 11, section 9 of our Constitution by the amendments (6th, 7th and 8th) adopted and approved in 1953 (1 T.C.A. pp. 762, 763). In general, the effect of these amendments is to give municipalities home rule over their local affairs.

These amendments set out how a municipality may become a home rule municipality and how it may continue under its existing charter, or amend the same, or adopt a new charter; and then follows the provision here involved, above quoted. As we have seen, under this provision, "a charter or amendment may be proposed."

(1) "by ordinance of any home rule municipality"; or

(2) "by a charter commission provided for by Act of the General Assembly and elected by the qualified voters of a home rule municipality voting thereon"; or, in the absence of such act,

(3) "by a charter commission of seven (7) members, chosen at large not more often than once in two (2) years, in a municipal election pursuant to petition for

such election signed by qualified voters of a home rule municipality not less in number than ten (10%) per cent of those voting in the then recent general municipal election."

Thus, a charter or amendment may be proposed by such a municipality itself, by "ordinance," or by "a charter commission," provided for by Act of the Legislature and elected by the voters of the municipality; or, if there is no such Act, chosen in the municipal election by the voters in the manner set out in section (3) above. It is with this last provision that we are here concerned; whether it is self-executing.

It is true there are some provisions of our Constitution, such as the inhibitions in our Bill of Rights, which are addressed not only to the Legislature and the Executive, but also to the Courts. They are self-executing. But there are other provisions which are addressed to the Legislature and confer upon it discretionary powers, or impose limitations on such discretion. As was said by this Court in *Friedman v. Mathes* (1872), 55 Tenn. 488, 498:

"While it is true, in reference to some provisions of a Constitution, that they are dormant and quiescent until some statute brings them into life and operation, yet there are others which need no legislation to give them effect. They are to be distinguished by such as confer mere discretionary powers upon the Legislature, and such as are positive limitations upon the legislative discretion—such as are mandates for legislative action, and such as are inhibitions *per se*."

To the same effect: *Bouldin v. Lockhart* (1873), 62 Tenn. 262, 281; *Johnson City v. Charleston, C. & C. Rail-*

*road Co.* (1898), 100 Tenn. 138, 144, 44 S.W. 670; *Southern Express Co. v. Patterson* (1909), 122 Tenn. 297, 292-293, 123 S.W. 353; *Biggs v. Beeler* (1943), 180 Tenn. 198, 205-207, 212-213, 173 S.W. 2d 144, 946, 153 A.L.R. 510.

■ It is said that the test of whether a constitutional provision is self-executing is whether it supplies, without aid of legislation, a sufficient rule by which the right given may be enjoyed and protected, or the duty imposed may be enforced. See cases collated in Annotation, Ann.Cas. 1914C, 1116; 11 Am.Jur., Constitutional Law, sections 71-77. In 1 Cooley's Constitutional Limitation (8th ed.), 167-169, the learned author says:

"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Thus, a constitution may very clearly require county and town government; but if it fails to indicate its range, and to provide proper machinery, it is not in this particular self-executing, and legislation is essential. Rights in such a case may lie dormant until statutes shall provide for them, though in so far as any distinct provision is made which by itself is capable of enforcement, it is law, and all supplementary legislation must be in harmony with it."

As pointed out by the Chancellor, an examination of the Journal and Proceedings of the Constitutional Convention of 1953 shows that the authors of these home rule provisions understood and intended them to be self-

executing. These provisions were introduced as Resolution No. 118 (Journal, pp. 261-262), and were explained by two of the authors, Delegates Cecil Sims (id., p. 1009-1012) and William E. Miller (now U. S. District Judge) (id., pp. 1044-1045), where the latter said:

"The reason for the length of Resolution No. 118 is to make it clear, and to make it unnecessary to have the workability of the plan implemented by legislation. In other words, it is to make it self-executing, so that the legislature would not have to pass an enabling act."

We agree with the Chancellor that the language of these provisions sufficiently expresses the intention that they shall be self-executing. It is true such language does not specify all the details by means of which the right here given may be enforced, but it does express such right and a sufficient rule for its enforcement, without the aid of implementing legislation.

In such a case, "minor details may be left for the Legislature without impairing the self-executing nature of constitutional provisions" (11 Am.Jur., Constitutional Law, sec. 73, p. 69); and "the omission from a Constitution of any express provision for a remedy for enforcing a right or liability is not necessarily an indication that it was not intended to be self-executing" (id., sec. 75, p. 692).

■ A Constitution is not the beginning of a community, nor does it originate and create institutions of government. Instead, it assumes the existence of an established system which is to continue in force, and is based on pre-existing rights, laws, and modes of thought. 11 Am.Jur., Constitutional Law, sec. 7, page 607; *Stratton Claimants*

*v. Morris Claimants* (1890), 89 Tenn. 497, 512, 15 S.W. 87, 12 L.R.A. 70.

Indeed, the Constitution of Tennessee gives emphatic expression to this assumption. It provides (Art. 11, sec. 1):

"Section 1. *Existing laws not affected by this Constitution.*—All laws and ordinances now in force and use in this State, not inconsistent with this Constitution, shall continue in force and use until they shall expire or be altered or repealed by the Legislature; but ordinances contained in any former Constitution or schedule thereto are hereby aborgated."

Likewise, the constitutional provision (Art. 11, sec. 9), above quoted and here under consideration, assumes the existence and validity of all laws and ordinances now in force and not inconsistent with it.

So, when it says a charter change may be proposed by "ordinance" of such municipality, it refers to action by the legislative body of the municipality; when it says such a change may be proposed by charter commission as set out in (2) above, it refers to action by the Legislature and by the voters of the municipality; likewise, when it says such change may be proposed by such commission chosen as set out in (3) above, it contemplates action by the voters in a municipal election to be called and held according to existing laws.

Thus, this provision gives the right and supplies the rule for its enforcement, in each of the three ways set out; and it assumes the existence of the functionaries that are to act in each case and the laws and ordinances under which they are to act. Though these may differ in differ-

ent municipalities, this provision is nonetheless self-executing legislation.

It is true that though the language in (3) above states in some detail the rule governing the choice of the charter commission in the municipal election, it does not specify the qualifications of the candidates for, or members of, such commission. It assumes, as the Chancellor held, that this may be done by the legislative body of the municipality involved.

As we have seen, the self-executing nature of this constitutional provision is not impaired by reason of its omission to set forth such minor details as to when and where the charter commissioners shall meet and how and to whom they shall report their proposals, if any.

This provision is immediately followed by the provision that it ''shall be the duty of the legislative body of such municipality to publish any proposal so made and to submit the same to its qualified voters,'' etc. So, the plain implication is that the commissioners shall report their proposals to the City's legislative body.

For these reasons, we think the Chancellor properly held that this constitutional provision is self-executing, that the legislative body of the City, by ordinance, may fix the qualification of charter members, and that the proposed election, held in accordance with the existing law, will be valid and legal.

All of the assignments of error are overruled, the decree of the Chancellor is affirmed, and a decree will be entered here making a declaration not inconsistent with this opinion. The costs are adjudged against the City of Johnson City and the surety on its appeal bond.