Norman **PARKS** and Harold Steele, Individually and on behalf of Nashville Chapter of Americans United for Separation of Church and State, Plaintiffs–Appellants,

v.

Lamar **ALEXANDER**, Governor, State of Tennessee; William M. Leech, Jr., Attorney General, State of Tennessee; and Gentry Crowell, Secretary of State, State of Tennessee, Defendants–Appellees.

Court of Appeals of Tennessee,
Middle Section.

Aug. 29, 1980.

Certiorari Denied by Supreme Court
Dec. 1, 1980.

Gary Crawford, Joseph H. Johnston, Nashville, for plaintiffs–appellants.

William M. Leech, Jr., Atty. Gen., Everett H. Falk, Deputy Atty. Gen., Nashville, for defendants–appellees.

## OPINION

LEWIS, Judge.

Plaintiffs filed their petition for declaratory judgment in the Chancery Court for Davidson County, Tennessee, and asked for a declaration that the amendment ratified by the voters in a statewide referendum on March 7, 1978, to Article XI, Section 12, of the Tennessee Constitution is null and void because the amendment violates Article XI, Section 3, of the Tennessee Constitution by exceeding the limitations of the convention call. Thereafter, defendants moved to dismiss the complaint on the grounds that plaintiffs lacked standing to maintain the action and that the complaint failed to present a justiciable controversy as required to present a case under the Declaratory Judgments Act, T.C.A. §§ 23–1101 to 1113. An agreed order striking plaintiffs' original complaint and granting leave to file an amended complaint was entered.

On May 18, 1979, plaintiffs filed an amended complaint asking for a declaration that the amendment, ratified by the voters on March 7, 1978, to Article XI, Section 12,[1] of the Tennessee Constitution is null and void because it violates Article XI, Section 3,[2] of the Tennessee Constitution since it

---

1. Tenn.Const. art. XI, § 12, now provides:

Education's inherent value–Public schools–Support of higher education.–The State of Tennessee recognizes the inherent value of education and encourages its support. The General Assembly shall provide for the maintenance, support and eligibility standards of a system of free public schools. The General Assembly may establish and support such postsecondary educational institutions, including public institutions of higher learning, as it determines.

2. Tenn.Const. art. XI, § 3, provides in pertinent part:

The Legislature shall have the right by law to submit to the people, at any general election, the question of calling a convention to alter, reform, or abolish this Constitution, or to alter, reform or abolish any specified part or parts of it; and when, upon such submission, a majority of all the voters voting upon the proposal submitted shall approve the proposal to call a convention, the delegates to such convention shall be chosen at the next general election and the convention shall assemble for the consideration of such proposals as shall have received a favorable vote in said election, in such mode

exceeds the limitations of the convention call as set out in Tennessee Public Acts, 1976, ch. 848. The amended complaint alleged that plaintiffs are citizens of the State of Tennessee, taxpayers of the State of Tennessee, and were voters in the referendum calling the 1977 limited constitutional convention. The complaint further alleged that Chapter 848 of the Public Acts of 1976 calling for the limited constitutional convention provided that the convention was to be limited to consideration of and action upon specified parts of the Constitution including only that part of Article XI, Section 12, relative to the segregation of white and Negro school children; that the amendment proposed by the limited constitutional convention to Article XI, Section 12, went beyond the limited subject matter of the convention call by repealing the existing Article XI, Section 12, in its entirety and substituting in lieu thereof an entirely new Article XI, Section 12; that the amendment to Article XI, Section 12, is void because it exceeds the express limitations stated in Chapter 848 of the Public Acts of 1976 and is ineffective according to the terms of Article XI, Section 3, of the Tennessee Constitution.

Plaintiffs alleged that they had been deprived of substantive and procedural due process of law under the 14th Amendment to the United States Constitution [3] and Article I, Section 8, of the Tennessee Constitution,[4] that their due process right is a cognizable property interest, and that they have a legally cognizable interest in protecting the integrity of the convention process because as voters in the referendum creating the limited constitutional convention they were deprived of the vested right to have the constitutional convention act lawfully and in accordance with the call. Plaintiffs alleged that this injury to them as voters in the referendum calling the convention is an injury different from that suffered by members of the public generally.

Further, plaintiffs alleged that Article XI, Section 12, prior to the amendment, constituted a limitation on the State's power to appropriate funds to support nonpublic schools; that since the repeal of the limitation, the General Assembly has enacted legislation which would not have been constitutional prior to the said repeal; that, as taxpayers, they are adversely affected by the illegal repeal of the limitation of the State's spending powers; that, as taxpayers, plaintiffs will now be forced to contribute to the support of projects which otherwise could not have been supported out of tax funds; and that these contributions constitute a further burden on plaintiffs as taxpayers.

On motion of the defendants, the Chancellor dismissed the amended complaint on the grounds that plaintiffs lacked standing to bring the suit and that the suit did not present a justiciable controversy as required for declaratory relief under T.C.A. §§ 23–1101 to 1113. Plaintiffs have appealed and present two issues: 1) Whether plaintiffs have standing either as voters or as taxpayers to challenge the legality of the amendment to Article XI, Section 12, of the Tennessee Constitution ratified on March 7, 1978, and 2) Whether plaintiffs' challenge

---

and manner as shall be prescribed. No change in, or amendment to, this Constitution proposed by such convention shall become effective, unless within the limitations of the call of the convention, and unless approved and ratified by a majority of the qualified voters voting separately on such change or amendment at an election to be held in such manner and on such date as may be fixed by the convention.

3. U.S.Const. amend. XIV, § 1, provides:
 Citizenship–Due process of law–Equal protection.–All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

4. Tenn.Const. art. I, § 8, provides:
 No man to be disturbed but by law.–That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

to the legality of the amendment to Article XI, Section 12, of the Tennessee Constitution ratified on March 7, 1978, presents a justiciable controversy.

In support of their first issue plaintiffs allege that the action of the limited constitutional convention in adopting the amendment to Article XI, Section 12, violated their constitutional rights to procedural and substantive due process under the due process clause of the 14th Amendment to the United States Constitution and Article I, Section 8, of the Tennessee Constitution when it arbitrarily and capriciously disregarded the provisions of Article XI, Section 3, of the Tennessee Constitution and the limitations of the convention call as set out in Tennessee Public Acts, 1976, ch. 848. Their contention is that the limited convention, by violating the provisions of Article XI, Section 3, of the Tennessee Constitution which defines the procedure for amending the Constitution, thereby violated their special interest as "qualified voters" who voted for the convention call and are entitled to have the convention act lawfully. They allege that this special interest as qualified voters is different from the interests of the public generally which includes persons who are not qualified voters and is thus sufficient to permit them to prosecute this action. They also allege that the convention ignored the limitations of the call and thus engaged in a constructive fraud upon the voters who participated in the election calling the convention.

■ It is universally held that to question the validity of a law, the person questioning the validity of that law must have an interest.

It is always open to interested persons to show that the legislature has transgressed the limits of its power, and persons injuriously affected may question the validity of a law. But the requirements of interest and injury are important ones. A constitutional question does not arise merely because it is raised and a decision thereof sought. Even though a statute is unconstitutional, only those who have a right to raise a question of its unconstitutionality may invoke the aid of the courts to have it judicially set aside, and the constitutionality of a legislative act is open to attack only by those persons whose rights are affected thereby. Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights. Assailants must therefore show the applicability of the statute to them and that they are thereby injuriously affected . . . .

. . . Absent a showing of injury, actual or threatened, there can be no constitutional argument. 16 Am.Jur.2d *Constitutional Law* § 188 (1979) (footnotes omitted).

■ The mere status of a taxpayer or voter is not sufficient to bring an action in and of itself:

Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights. He must show that he personally has sustained, or is in immediate danger of sustaining, some direct injury as the result of such enforcement, and not merely that he suffers in some indefinite way in common with people generally. 59 Am.Jur. 2d *Parties* § 26 (1971) (footnote omitted).

The generally acknowledged purpose of this requirement of special damage or private harm to the individual rests in the public policy of protecting public corporations from a profusion of suits. See 42 Am.Jur. *Injunctions* § 179 (1969).

*Patton v. Chattanooga*, 108 Tenn. 197, 65 S.W. 414 (1901), has been cited as the leading case on the modern doctrine of taxpayers' standing in Tennessee. *See Wamp v. Chattanooga Housing Authority*, 527 F.2d 595 (6th Cir. 1975), *cert. denied*, 425 U.S.

992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976). In *Patton*, nineteen citizens of Chattanooga, on behalf of all taxpayers, brought suit to have an ordinance declared void. The ordinance granted certain persons the right to establish and to maintain an electrical plant and a telephone, telegraph, and electrical exchange in the City. The Court of Chancery Appeals affirmed the Chancellor's holding that the ordinance was void. The Supreme Court reversed:

> There is no question as to the jurisdiction of the Chancery Court to restrain municipal ordinances upon the ground that they are beyond the powers conferred upon the municipality, or that they were not passed regularly or according to the forms of law.
>
> There is no question that any one who suffers, or will suffer, a special injury, may maintain a suit to test the validity of an ordinance upon either of these grounds, and that such a bill may be maintained by a taxpayer, as such, if the result of the ordinance will be to increase his tax burden.
>
> What we decide is, that it is essential to the jurisdiction of the Court, in such a case, that there shall be an allegation that the effect of the ordinance, claimed to be illegal, will be to require of complainant the payment of a tax, to increase his tax burdens, or otherwise inflict an injury not common to the body of the citizens. 108 Tenn. at 221, 65 S.W. at 420.

The Court continued:

> In all such matters—matters which affect not the private rights of certain citizens, but only those public rights which are common to all and incident to citizenship itself, the law confers upon the duly elected representatives of the people the sole right to appeal to the courts for redress. It is only when he can go further, and show some right which he has aside from those rights which are incident to the mere fact of citizenship, that he may, for himself, or in behalf of others

similarly situated, invoke the conceded jurisdiction of the courts to restrain an ordinance passed irregularly or without authority. Matters of common interest, both of original action and of redress, are entrusted to duly chosen public officials, and, in such matters, the Chancery Court is not open to confer upon private citizens the right of public guardianship. *Id.* at 222, 65 S.W. at 420.

Further:

> It is a well settled rule that equity will not interfere by its injunctive process in a case like this, unless the complainants show that they will suffer some special injury, and not merely an injury in common with the body of the citizens. This rule is, we believe, without exception. There is a line of Tennessee cases in which taxpayers, as such, may maintain an injunction against public officials. But these are cases involving public revenues, and in which the result of the proposed action will be to increase the burden of taxation. It being proposed to increase the burden of taxation upon each individual taxpayer, he will sustain an injury not common to those citizens who are not taxpayers, and hence, as a taxpayer, on behalf of himself and other taxpayers, he has a status in court to contest the legality of the accomplished or proposed action. [citing *Lynn v. Polk, Kennedy v. Montgomery County,* and *Colburn v. Chattanooga Western Railroad, infra.*]
>
> But these cases are strictly in line with the rule that complainants must be threatened with an injury not common to the body of the citizens. *Id.* at 223–24, 65 S.W. at 421.

The Court asserted that one must suffer a special injury to test the validity of an ordinance on the grounds that it is beyond powers conferred upon the municipality or that it was not passed according to the forms of law and that the relationship increases his tax burden. *Id.* at 221, 65 S.W. at 420. The line of cases to which the

above quote refers merely clarifies the "special injury" concept not shared with the body of citizens and will be discussed below. The *Patton* distinctions concern when the complainant must, as a matter of form, allege special injury in the complaint. *Patton* requires that when the ultra vires actions of municipal officers are challenged, an allegation of increased taxes or other special injury is essential to the court's jurisdiction. *Id.*

In resolving the standing issue in *Patton* in regards to the ordinance, the Court stated: "[I]t is clear that complainants have no status in Court. What injury can this ordinance possibly do to them which is not common to all citizens?" *Id.* at 227, 65 S.W. at 421–22.

In *Lynn v. Polk*, 76 Tenn. 121 (1881), the challenged act was one " 'to settle and compromise the bonded indebtedness of the State.' " *Id.* at 122. In form, outstanding bonds were to be redeemed and exchanged for "compromise bonds." The coupons would then be received in payment for taxes and debts due the state. On the hearing to dissolve an injunction, the Chancellor dismissed the bill. In referring to the status of complainants, the Court said:

> As we have seen, they are citizens and tax–payers of the State. It must be that, to the extent of taxes for which they are respectively liable, each has an interest in the questions raised. The act of the Legislature and the defense to the bill constitute an effort in the direction to make each pay such an amount of money as may be assessed upon his property, to the end that the law shall be carried out . . . . If the law is valid, it makes an increase of taxes to be collected of each tax–payer, to be proportioned in the distribution of the additional levy of the annual three per cent. interest on the funded debt. The act, while in its present shape, is merely a proposal to contract. If the injunction is cut loose, and the creditors accept its terms and fund their debts, it is then an executed contract, and gives to

the creditor the right and power to collect by law three per cent. of taxes annually, more than can now be collected by law. *Id.* at 123–24.

In this increased tax burden resulting from wrongful legislative action rests the special or private harm which separates these taxpayers from all the citizens in the state.

In deciding that the taxpayers had standing, the Court stated:

> The only question for us to decide, upon the right to sue, is, have complainants an interest in the subject–matter of the suit such as will entitle them to invoke the judgment of the court upon legal questions? . . . Then, as these complainant tax-payers could not by the law at the time of the contract, and which is part of that contract, be compelled to pay anything, now that it is attempted to change the contract and the law, so as to compel the payment of three per cent. yearly . . ., it must be that they have a direct and personal interest in the questions, and are proper parties to make them. *Id.* at 124–25.

In *Colburn v. Chattanooga Western Railroad*, 94 Tenn. 43, 28 S.W. 298 (1894), two taxpayers of Hamilton County sought an injunction to stop delivery of county bonds to a railroad. The bonds were issued to secure the building of a bridge across the Tennessee River. The cost of the bridge would have exceeded the amount which could be realized from special taxation, thus necessitating the bond issue. The defendants' demurrer was overruled and a perpetual injunction granted. Although the Court did not discuss the standing issue per se, that the unconstitutional augmentation of the county indebtedness bore a direct correlation to the tax liability of Hamilton County taxpayers who would then "sustain an injury not common to those citizens who are not taxpayers" is evident. *Patton v. Chattanooga*, 108 Tenn. at 223, 65 S.W. at 421.

*Kennedy v. Montgomery County*, 98 Tenn. 165, 38 S.W. 1075 (1897), is a consoli-

dation of two taxpayer suits. In the first, an injunction was sought to enjoin collection of a special tax assessed for railroad purposes because money was on hand to discharge the railroad indebtedness. The injunction was granted and then dissolved on answer, and a demurrer to the injunction bill sustained. In the second suit a petition to supersede a levy made to collect such tax from plaintiff taxpayer was dismissed.

The county had subscribed $250,000 to a railroad. The legislature passed an act providing for the issuing of bonds with any dividends from the stock to be applied to the interest on the bonds, thereby creating a sinking fund to retire them. If the dividends were not sufficient, the county court was directed to levy a railroad tax. Plaintiffs alleged that the county judge misapplied the revenues to other county debts, and he was enjoined from doing so in a separate suit. When the bonds matured, the sum of $134,000 remained outstanding. By legislative act, these bonds were refunded into new bonds. The bill charged that the taxpayers, under the 1893 levy, had more than enough money to discharge the outstanding bonds; yet, despite that fact, the county court levied a railroad tax in 1894.

The Court stated:

When the people consent to be taxed for any purpose they cannot complain, but when they are taxed for one purpose and the fund applied to another, and when they are misled as to the purposes for which they are being taxed, they have a right not only to complain, but a remedy to redress the grievance, if they apply to the Courts in the proper way and at the proper time. *Id.* at 180, 38 S.W. at 1079.

The common denominator in the latter three cases is the violation of a constitutional mandate limiting the amount or form of tax liability. In all the cases, the acts complained of were in violation of an existing law, the validity of which was not contested.

In *Patton*, Chief Justice Snodgrass explained the purpose for establishing technical rules of standing when a government action is challenged:

They lie at the very foundation of the orderly conduct of municipal government. If cities could not exercise public powers, even erroneously or unwisely, when lawfully done by their constituted legislative authority, without the concurrence of every citizen or taxpayer, it would be impossible to have municipal government, and there never could be any certainty or permanence in municipal grants of franchises for public purposes. And if, when granted, they are open to other contest than that and by those indicated, no public work could ever be accomplished, and intolerable confusion and complication would prevail in every city of sufficient importance to have competing or conflicting interests in public grants, or discontented citizens to litigate all public acts not affecting their private interests. Besides, it would delay many and destroy more useful public enterprises requiring municipal authority. *Id.* at 231, 65 S.W. at 422–23.

In *Pope v. Dykes*, 116 Tenn. 230, 93 S.W. 85 (1905), citizens and taxpayers of Marion County sued the road commission and sought to enjoin it from working on certain roads alleged to be either not set out in the act authorizing a bond issue or not one of the roads to be completed first. The defendants answered the bill and obtained leave to amend their demurrer " '[b]ecause said complainants and none of them had or had shown any peculiar or particular injury suffered or sustained which entitles them or either of them to maintain this bill.' " *Id.* at 238, 93 S.W. at 87. The demurrer was sustained. In addressing the standing issue, the Court stated:

The first question to be settled is in respect of the rights of complainants to maintain this bill. The precise ground upon which complainants rely is thus stated by their learned counsel: "Our contention is that this is a suit on behalf of taxpayers to prevent a mal–adminis-

tration of public funds, derived from sales of public bonds, the principal and interest of which will have to be paid by the taxpayers of the county, thereby necessarily increasing the burden of taxation, in which the taxpayers have such a special interest as entitles them to a status in court . . . . It has always been understood as axiomatic that a taxpayer, for himself and other taxpayers, might maintain an action to prevent the commission of an unlawful act, the effect of which would be to increase his burden of taxation, or to divert a public fund from the purpose for which it was intended by law. In cases like this, the taxpayers have such a special interest in the subject–matter as will authorize them to maintain an injunction." Counsel cites [several cases] in support of his proposition . . . . But it is said the rule announced in the cases . . . has been changed by the recent ruling of this court in *Patton v. Chattanooga*, [*supra*]. *Id.* at 239–40, 93 S.W. at 87 (some citations omitted).

In distinguishing *Patton*, the Court continued:

In *Patton v. Chattanooga* . . . . [i]t was held by this court that the ordinance in question was not of a nature that inflicts or imposes upon the complainant citizens any loss, burden, injury, or deprivation of rights that is not common to the entire body of citizens and taxpayers. It was further held that it is essential in the bill brought by citizens and taxpayers to enjoin a city ordinance on account of its alleged invalidity that complainants aver that they are or will be subjected by such ordinance to some loss, burden, injury, or deprivation of rights peculiar to themselves and not imposed alike and in common upon the entire community. Matters of common interest affecting alike all members of the community are within the exclusive jurisdiction of said authorities

. . . . .

But the case made in the present bill is altogether different. It is alleged herein

that defendants are acting outside of the authority conferred upon them by the act of 1903, in that they are diverting public funds to the building of a road not authorized by the act, which will result in irreparable injury to the county and taxpayers. The effect of the misappropriation of these funds would of course be the imposition of additional tax burdens upon the complainants. We are therefore of opinion that complainants are entitled to maintain this bill to the extent that it seeks to enjoin the building of the mountain road which is not authorized by the act of 1903. *Id.* at 240–42, 93 S.W. at 88 (citation omitted).

Thus *Pope*, in accord with *Kennedy* and *Patton*, recognizes the special or private injury to taxpayers when an official is diverting public funds from their designated and authorized use.

In *Reams v. Board of Mayor and Aldermen of McMinnville*, 155 Tenn. 222, 291 S.W. 1067 (1927), a taxpayer sought to enjoin the Mayor and Board from locating a school outside the corporate limits of the town. The Chancellor overruled the demurrer challenging plaintiff's right to bring a taxpayer's suit. In accordance with the general rule, *Reams* asserts that taxpayers may sue to enjoin official action which violates their legal obligations if the conduct would impose a burden upon taxpayers which would not be imposed upon nontaxpayers. *Reams*, therefore, requires for taxpayers' standing that the officer must be acting illegally, in the sense of no color of right; that such act must impose additional taxation or result in the additional expenditure of municipal funds; and that there must be injury to the taxpayer to the exclusion of the nontaxpayer. *Id.* at 225–26, 291 S.W. at 1068.

In *Badgett v. Rogers*, 222 Tenn. 374, 436 S.W.2d 292 (1968), the court summarized standing rights to date. In *Badgett* a taxpayer brought suit for recovery of a sum paid the mayor in connection with an expense account and for injunctive relief.

The Chancellor dismissed the suit. On appeal, the Court framed the crucial issue as follows: "Does an individual citizen and taxpayer of a municipality have standing to seek relief against municipal officials for alleged misappropriation or misuse of tax funds?" *Id.* at 378, 436 S.W.2d at 293.

The Court discussed the competing considerations to be balanced in resolving the standing issue:

> On the one hand, it is undeniably the right of a taxpayer to know that his taxes are expended properly and are not unlawfully diverted or misused. On the other hand, the courts have long recognized the necessity of allowing municipal officials to perform their duties without interference from frequent and possibly frivolous litigation and the inexpedience of putting municipal officers at hazard to defend their acts whenever any member of the community sees fit to make the assault, whether for honorable motives or not. The courts have been commensurately reluctant to usurp or supersede the discretion of municipal authorities to determine which municipal undertakings are necessary and appropriate. *Id.* at 378, 436 S.W.2d at 293–94.

The Court then delineated the general rule:

> An action by citizens and taxpayers of a municipality questioning the conduct of the municipality or its officers is ordinarily dependent upon averment of a special injury, status or relation affecting, individually, the citizen attempting to prosecute the action. Generally, the prime test of this inquiry as to special injury or interest is that it not be common to the body of citizens as a whole. In a proper case, absent such averment, it is the duty of the trial judge to dismiss the cause. *Id.* at 379, 436 S.W.2d at 294.

Although later cases have applied these principles, they are not significant in the general development of standing in Tennessee courts.

The case law appears uniform and consistent. The general rule from the early cases cited in *Patton v. Chattanooga, supra,* was that a taxpayer on his own behalf and that of others could maintain an action to prevent the commission of an unlawful act which would increase his tax burden or create a diversion of public funds from their lawful purpose. As *Badgett* indicates, if the wrong is a public wrong, that is, if the misuse of tax funds is asserted to be an injury to all citizens and taxpayers, the obligation is on the proper officials to challenge and to rectify the situation. The exception in this situation is that a demand must be made upon the public authorities to rectify the situation prior to the initiation of any action by a citizen and taxpayer in light of the authorities' refusal to act, but "such demand is excused where the status and relation of the involved officials to the transaction in question is such that any demand would be a formality." *Id.* at 381, 436 S.W.2d at 295 (citations omitted).

All the cases require some special or private damage to the complainants that separates their interest in the subject matter from that of the citizenry at large. Some of the cases recognize that being a taxpayer and bearing additional liability may constitute such special damage.

Beneath the requirement of special or private damage, however, is the issue of when such special injury must be alleged. *Patton* requires that when the acts of public officials are being challenged as ultra vires, the bill may be maintained by a taxpayer only if the injury is alleged. 108 Tenn. at 221, 65 S.W. at 420. Subsequently, *Pope v. Dykes, supra,* clarified the *Patton* requirement by noting that since the *Patton* injury was common to all the citizenry, the special allegation was required. 116 Tenn. at 241, 93 S.W. at 88. *Pope,* concerning the misapplication of earmarked tax funds, recognized that special injury need not be specifically averred because the imposition of additional tax burdens upon the complainant taxpayer is obviously a special injury. *Id.* at 241–42, 93 S.W. at 88.

 The legislature initiates the process of amending the Tennessee Constitution

by the constitutional convention route prescribed in Article XI, Section 3, of the Constitution by proposing to call a convention. This proposal is then submitted to the people for approval or rejection. If the people approve, the call of the convention is a call by the people, not by the legislature. *Illustration Design Group, Inc. v. McCanless*, 224 Tenn. 284, 295, 454 S.W.2d 115, 119 (1970). A call for a constitutional convention is a call by the people in general, not by any particular group of people such as "qualified voters" who vote in the convention call referendum or voters who vote for the convention call in the referendum. Plaintiffs here obtained no greater interest in the deliberations and proposals of the convention by virtue of their having voted in the referendum than they had as citizens of the State of Tennessee in general.

■ The contention of plaintiffs that the limited constitutional convention engaged in a constructive fraud on the voters who participated in the referendum is without merit. The theory of constructive fraud concerns a breach of a legal or equitable duty, with or without fraudulent intent. *Maxwell v. Land Developers, Inc.*, 485 S.W.2d 869, 875 (Tenn.App.1972) (citation omitted), and entails, as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others. The limited constitutional convention, under Article XI, Section 3, had only the power to propose amendments to the Constitution for later ratification or rejection by the people. It was not even in existence at the time of the voter participation in the referendum on the call. The subsequent actions of the convention could have had no influence on the conduct of the voters in the call for the referendum. Accordingly, the convention could not have engaged in constructive fraud upon the people in general since the people in general had an opportunity to approve or to reject the proposals drafted by the convention and submitted to the people.

■ Plaintiffs also contend that a showing of special interest is not necessary to maintain an action of extraordinary interest. They cite, in support of this contention, *Carden v. Bland*, 199 Tenn. 665, 288 S.W.2d 718 (1956). There a citizen and taxpayer was permitted to maintain an action challenging mandatory prayer and Bible reading in the public schools. The citizen and taxpayer filed his bill not only on behalf of himself but also on behalf of his minor children who were specially affected by the challenged practices. In holding that the suit should not have been dismissed by the trial court, the Court stated:

> While there are numerous authorities which seem to sustain the contention of both the State's Attorney General and the School Board that complainants have not shown that they have such special interest that entitles them to maintain this suit, we feel that it should not be dismissed on that ground because of the general public interest involved, and more especially the interest of pupils, most of whom are at an impressionable age, and who cannot otherwise speak for themselves. *Id.* at 671, 288 S.W.2d at 721.

The Court, in *Carden*, was concerned with the interests of the pupils in an ongoing situation. Here the plaintiffs are challenging a constitutional provision that is not self–executing, and they are not contending that they are representing the interest of persons who cannot otherwise speak for themselves.

Plaintiffs here have failed to show sufficient standing to bring this action. They have failed to allege any special interest or injury peculiar to themselves as opposed to the public in general. They do not come within any of the exceptions.

■ We next discuss whether plaintiffs' challenge to the legality of the amendment to Article XI, Section 12, of the Tennessee Constitution ratified on March 7, 1978, presents a justiciable controversy. That to maintain an action for a declaratory judgment a justiciable controversy must

exist between persons with adverse interests is well settled. *Jared v. Fitzgerald*, 183 Tenn. 682, 689, 195 S.W.2d 1, 4 (1946). For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a real legally protectable interest must be at stake on the part of plaintiff. *Cummings v. Beeler*, 189 Tenn. 151, 156, 223 S.W.2d 913, 915 (1949). If the controversy depends upon a future or contingent event or involves a theoretical or hypothetical state of facts, the controversy is not justiciable under the Tennessee Declaratory Judgments Act. *Story v. Walker*, 218 Tenn. 605, 607–08, 404 S.W.2d 803, 804 (1966); *United States Fidelity & Guaranty Co v. Askew*, 183 Tenn. 209, 212–13, 191 S.W.2d 533, 534–35 (1946). The Declaratory Judgments Act does not give the courts jurisdiction to render advisory opinions to assist the parties or to allay their fears as to what may occur in the future.

■ Plaintiffs' amended complaint does not present a justiciable controversy. The amendment to Article XI, Section 12, of the Tennessee Constitution shows by its terms that it is not self–executing.

"A constitutional provision may be said to be self–executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self–executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." *Washington County Election Commission v. City of Johnson City*, 209 Tenn. 131, 137, 350 S.W.2d 601, 603 (1961) (quoting 1 Cooley's *Constitutional Limitations* 167–68 (8th ed. 1927) (footnotes omitted)).

Here legislative action is required to affect any rights of plaintiffs. Plaintiffs' present rights are not affected.

■ In the case at bar the controversy between the parties is theoretical and contingent upon the enacting of legislation implementing the amendment. Plaintiffs have not specified any particular legislation which would adversely affect them under the amendment. A claim based upon assumed potential invasion of rights is insufficient to establish a justiciable controversy under the Declaratory Judgments Act. *West v. Carr*, 212 Tenn. 367, 380–81, 370 S.W.2d 469, 475 (1963). Plaintiffs' amended complaint fails to present a justiciable controversy.

The judgment of the Chancellor is sustained. Costs are assessed to plaintiffs, and this cause is remanded to the Trial Court for the collection of costs and any other necessary orders.

SHRIVER, P. J., and DROWOTA, J., concur.