IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 17, 2006 Session

## STATE OF TENNESSEE v. TINO VERNELL RODGERS (A MINOR)

### Direct Appeal from the Circuit Court for Gibson County
No. 16948      Clayburn Peeples, Judge

_____

### No. W2005-00632-COA-R3-CV - Filed May 23, 2006

_____

In this case we are asked to review a juvenile's confinement following a juvenile court's finding that the juvenile violated the terms of his probation. The juvenile court found the juvenile to be delinquent after the juvenile entered a guilty plea to an assault charge, and the court placed the juvenile on probation. Thereafter, the juvenile was charged with other offenses, and the juvenile court entered a verbal directive placing the child on house arrest. When the juvenile violated this directive, the juvenile court entered an order finding that the juvenile violated the terms of his probation and committed him to the custody of the Tennessee Department of Children's Services. After being confined, the juvenile filed a post-commitment petition pursuant to the Juvenile Post-Commitment Procedures Act in the circuit court. The circuit court upheld the juvenile court's ruling. The juvenile appealed the circuit court's decision to this Court. During the pendency of this appeal, the juvenile was released from custody. Accordingly, we hold that the present appeal is not justiciable under the doctrine of mootness, therefore, we dismiss the present appeal.

### Tenn. R. App. P. 3; Appeal as of Right; Appeal Dismissed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Roger Stanfield, Jackson, TN, for Appellant

Paul G. Summers, Attorney General and Reporter, Brian Clay Johnson, Assistant Attorney General, Nashville, TN, for Appellee

# OPINION

## I.

### FACTUAL BACKGROUND & PROCEDURAL HISTORY

Tino V. Rodgers ("Rodgers" or "Appellant") was born on May 9, 1987. On March 2, 2004, the Juvenile Court of Gibson County entered an order finding Rodgers, who was sixteen years of age at the time, to be a delinquent child after Rodgers entered a plea of guilty to the criminal charge of assault.[1] The juvenile court ordered that Rodgers be committed to the custody of the Tennessee Department of Children's Services ("DCS") with such commitment being suspended subject to his compliance with the rules of probation crafted by the court.[2]

On April 2, 2004, a petition was filed in the juvenile court charging Rodgers with the offense of theft of property, alleging that he stole a cigarette lighter from a local store. On May 3, 2004, two petitions were filed in the juvenile court charging Rodgers with possession of marijuana and cocaine at Gibson County High School. On May 24, 2004, the juvenile court verbally directed that Rodgers be placed on house arrest pending a disposition of the petitions filed against him. The juvenile court did not memorialize this verbal directive by entering a written order.

On June 1, 2004, a petition was filed in the juvenile court alleging that Rodgers violated the terms of his probation when he left his residence in violation of the oral house arrest directive entered by the juvenile court.[3] On June 2, 2004, the juvenile court entered an order finding that Rodgers violated the terms of his probation.[4] The court committed Rodgers, who was seventeen years of age at the time, to the custody of DCS, and he was placed in the Wilder Youth Development

---

[1] A "delinquent act" is defined as "an act designated a crime under the law." TENN. CODE ANN. § 37-1-102(b)(9) (2005).

[2] If the juvenile court finds a child to be a delinquent child, then the court may enter an order placing the child on probation under the supervision of DCS subject to such conditions as the juvenile court deems best suited to the child's treatment, rehabilitation, and welfare. TENN. CODE ANN. § 37-1-131(a)(2) (2005).

[3] The original rules of probation entered by the juvenile court did not contain a house arrest provision but only required Rodgers to comply with a curfew of 9:00 p.m. on weekdays and 10:00 p.m. on weekends. The rules of probation did prohibit Rodgers from using or being in possession of alcohol or drugs and required that he obey all laws. The petition, however, only alleged that Rodgers violated his probation by failing to comply with the juvenile court's oral house arrest directive. It did not allege a violation of probation as a result of petitions being filed charging him with theft of property and possession of narcotics.

[4] A violation of probation cannot be considered a "delinquent act" since it is not designated a crime under the criminal law of this state. *State v. Jackson*, 60 S.W.3d 738, 743 (Tenn. 2001). Thus, it is not a new conviction for which separate punishment may be imposed. *Id.* A petition alleging a violation of probation is "merely a 'mechanism which may trigger the revocation of a previously granted probation.'" *Id.* (quoting *State v. Painter*, 394 N.W.2d 292, 294 (Neb. 1986)). "When the probationer violates the conditions of probation, regardless of the basis for the violation, the court is then required to decide whether to rescind its 'granting of grace' to lessen the impact of a criminal sentence." *Id.* at 744 n.6.

Center.[5]  On August 24, 2004, the juvenile court entered an order on the theft of property petition, finding Rodgers to be a delinquent child and ordering that he remain in DCS custody.  That same day, the juvenile court entered an order retiring the petitions charging Rodgers with possession of controlled substances.

On December 8, 2004, Rodgers filed a pro se petition in the Circuit Court of Gibson County pursuant to the Juvenile Post-Commitment Procedures Act.[6]  Therein, he alleged that he never received a hearing on the petition alleging a violation of probation and sought to challenge his incarceration for violating the terms of his probation.  After Rodgers requested the assistance of counsel due to his indigence, the circuit court appointed an attorney to represent him in the matter.  After conducting a hearing on the petition, the circuit court entered an order on February 11, 2005, finding as follows:

> From the foregoing, it appeared to the court, and the court so finds, that the Juvenile Court Judge of Gibson County verbally ordered Tino Rodgers, in open court, be placed on house arrest pending trial on later charges; that at the time that Judge Newell verbally ordered him be placed on house arrest, Tino Rodgers was already on probation; that Tino Rodgers was present in court, heard the order, and knew that he was verbally ordered to be on house arrest; that the verbal order was never reduced to writing and therefore never filed or served on Tino Rodgers in written form; that even though the verbal order was never written down or served upon Tino Rodgers, it nevertheless operated as an amendment to Tino Rodgers rules of probation; that when Tino Rodgers left his home while under the verbal order of house arrest, knowing that he was under a verbal order of house arrest, he violated his probation; that

---

[5] "An order of the juvenile court committing a delinquent child to the custody of the department of children's services shall be for an indefinite time."  TENN. CODE ANN. § 37-1-137(a)(1)(A) (2005).  "The department may place the child in a suitable state institution, foster home or group home, or the department may purchase services from any agency, public or private, that is authorized by law to receive or provide care or services for children."  *Id.* § 37-1-137(a)(1)(B)(5).

[6] The Act, codified at section 37-1-301 *et seq.* of the Tennessee Code, provides as follows:

> A juvenile in the custody of [DCS] pursuant to a commitment by a juvenile court of this state may petition for post-commitment relief under this part at any time after the juvenile has exhausted the juvenile's appellate remedies or time for an appeal to the circuit court pursuant to § 37-1-159 . . . .

TENN. CODE ANN. § 37-1-302 (2005).  Rodgers had ten (10) days within which to perfect his appeal following the juvenile court's disposition of his case.  *See id.* § 37-1-159(a).  As the time for appeal had expired by the time he filed his petition in the circuit court, he falls within the purview of the Act.  "To begin proceedings under this part, the petitioner shall file a written petition with the clerk of the chancery or circuit court in the county in which the commitment occurred, naming the state of Tennessee as the respondent."  *Id.* § 37-1-303.

the petition seeking revocation of his probation for violating a rule of probation by violating Judge Newell's verbal order of house arrest was appropriate; that the juvenile court's finding that he had violated his probation by violating Judge Newell's verbal order of house arrest was legal and correct.

Accordingly, the circuit court dismissed Rodgers' petition and upheld his confinement. Rodgers timely appealed the circuit court's decision to this Court.[7]

## II.
### DISCUSSION

On appeal, Rodgers asserts that the issue before this Court is whether a juvenile placed on probation may be incarcerated as a delinquent offender for violating the terms of probation when the juvenile is alleged to have violated an oral condition of pre-trial release, and not a rule of probation.

The Juvenile Post-Commitment Procedures Act provides as follows:

> Relief under this part shall be granted when petitioner's commitment is void or voidable because of the abridgement in any way of any right guaranteed by the laws or constitution of this state, or the Constitution of the United States, including a right that was not recognized as existing at the time of the trial if either constitution requires retrospective application of that right.

TENN. CODE ANN. § 37-1-305 (2005). In order to comply with federal grant requirements, the Appendix to the Tennessee Rules of Juvenile Procedure provides, in relevant part, as follows:

> § 31.303 Substantive requirements.
>
> * * * *
>
> (f) * * *
> (3) Valid Court Order. For the purpose of determining whether a valid court order exists and a juvenile has been found to be in violation of that valid order all of the following conditions must be present prior to secure incarceration:
> (i) The juvenile must have been brought into a court of competent jurisdiction and made subject to an order issued pursuant

---

[7] "The order granting or denying relief under the provisions of this part shall be deemed a final judgment, and an appeal may be taken to the court of appeals by simple appeal." TENN. CODE ANN. § 37-1-321 (2005).

to proper authority. The order must be one which regulates future conduct of the juvenile. Prior to issuance of the order, the juvenile must have received the full due process rights guaranteed by the Constitution of the United States.

(ii) The court must have entered a judgment and/or remedy in accord with established legal principles based on the facts after a hearing which observes proper procedures.

(iii) *The juvenile in question must have received adequate and fair warning of the consequences of violation of the order at the time it was issued and such warning must be provided to the juvenile and to the juvenile's attorney and/or legal guardian in writing and be reflected in the court record and proceedings.*

TENN. R. JUV. P. app. (2005) (quoting 28 C.F.R. § 31.303 (2005) (emphasis added)).

Rodgers contends that the aforementioned provision in the Appendix to the Tennessee Rules of Juvenile Procedure, referred to as the "valid court order" rule, establishes that the verbal directive from the juvenile court cannot serve as the basis for his incarceration. In response, the Attorney General agrees and states in his brief filed on behalf of the state as follows:

The State concedes that the trial court erred by failing to grant the petitioner relief. The juvenile court erroneously committed the petitioner to DCS because the verbal order of "house arrest," the basis for the probation violation for which the juvenile was committed, was never a rule of the petitioner's probation. In any event, the verbal order was not reduced to writing. In Tennessee, a juvenile must receive adequate and fair warning, *in writing*, of the consequences of violating an order of the court. Here, that was not done.

(emphasis in original). Thus, both parties agree that the juvenile court acted unlawfully when it incarcerated Rodgers for violating an oral directive of the juvenile court and that the circuit court erred when it failed to grant Rodgers relief under the Juvenile Post-Commitment Procedures Act.

Counsel for Rodgers informed this Court during oral argument that Rodgers was released from DCS custody during the pendency of this appeal. When asked by the Court at oral argument about whether his release from confinement rendered the present appeal moot, counsel for Rodgers conceded that the case may have been rendered moot by this fact. Despite the concession offered by the Attorney General on appeal and his release from confinement, Rodgers urges this Court to issue an opinion on the issue since, according to counsel for Rodgers, the issue arises with unfortunate regularity in juvenile proceedings across the state. Accordingly, Rodgers asserts that the issue falls within certain exceptions to the mootness doctrine, and he asks this Court to enter an opinion holding that a rule of pre-trial release cannot serve as a rule of probation unless the rules of probation are amended in the proper manner.

"The courts in this State have consistently followed the principle that to invoke the jurisdiction of the court it is primarily essential that there be a genuine and existing controversy requiring present adjudication of present rights." ***Dockery v. Dockery***, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977). It is essential that before the jurisdiction of the courts may be invoked, a controversy calling for a present adjudication of the rights of the parties must exist. ***State ex rel. Lewis v. State***, 347 S.W.2d 47, 48 (Tenn. 1961). The doctrine of mootness serves to further this policy, and we previously have described the doctrine's application in the following terms:

> The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights. *State ex rel. Lewis v. State*, 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977). Thus, our courts will not render advisory opinions, *Super Flea Mkt. of Chattanooga v. Olsen*, 677 S.W.2d 449, 451 (Tenn. 1984); *Parks v. Alexander*, 608 S.W.2d 881, 892 (Tenn. Ct. App. 1980), or decide abstract legal questions. *State ex rel. Lewis v. State*, 208 Tenn. at 538, 347 S.W.2d at 49.
>
> Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 1253, 108 L. Ed. 2d 400 (1990); *Kremens v. Bartley*, 431 U.S. 119, 128-29, 97 S. Ct. 1709, 1715, 52 L. Ed. 2d 184 (1977); 13A Charles A. Wright et al., *Federal Practice and Procedure* §§ 3533, 3533.10 (2d ed. 1984) ("Federal Practice and Procedure"). The concept of mootness deals with the circumstances that render a case no longer justiciable. *Davis v. McClaran*, App., 1993 Tenn. App. LEXIS 760, No. 01-A-01-9304-CH-00164, slip op. at 2, 19 T.A.M. 1-3 (Tenn. Ct. App. Dec. 10, 1993), *perm. app. granted* (Tenn. Mar. 28, 1994) ("mootness is a doctrine of justiciability"); Federal Practice and Procedure § 3533, at 211.
>
> A moot case is one that has lost its character as a present, live controversy. *McCanless v. Klein*, 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945); *Krug v. Krug*, 838 S.W.2d 197, 204 (Tenn. Ct. App. 1992); *LaRouche v. Crowell*, 709 S.W.2d 585, 587 (Tenn. Ct. App. 1985). The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief. Federal Practice and Procedure § 3533.3, at 261. A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party. *Church of Scientology v. United States*, — U.S. — , — , 113 S. Ct. 447, 449 (1992); *Knott v. Stewart County*, 185 Tenn. 623, 626,

> 207 S.W.2d 337, 338-39 (1948); *Massengill v. Massengill*, 36 Tenn.
> App. 385, 388-89, 255 S.W.2d 1018, 1019 (1952).

*McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). Numerous exceptions to the doctrine of mootness have been recognized by our courts, *Dockery*, 559 S.W.2d at 955, with the most common exceptions being "(1) issues of great public interest and importance to the administration of justice, and (2) issues capable of repetition yet evading review," *McIntyre*, 884 S.W.2d at 137 (citations omitted).

"Determining whether a case is moot is a question of law." *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, No. M2002-02555-COA-R3-CV, 2005 Tenn. App. LEXIS 284, at *11 (Tenn. Ct. App. May 10, 2005) (petition for cert. filed). "Decisions concerning whether to take up cases that fit into one of the exceptions to the mootness doctrine are discretionary with the appellate courts." *McIntyre*, 884 S.W.2d at 137 (citing *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977)).

Regarding the "public interest" exception to the doctrine of mootness, it has been said:

> Generally, public interest "means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals." 132 A.L.R. 1189. The types of issues the courts are likely to resolve despite their mootness are:
>
> > (1) questions that are likely to arise frequently;
> > (2) questions involving the validity or construction of statutes;
> > (3) questions relating to elections;
> > (4) questions relating to taxation, revenue, or governmental financial affairs;
> > (5) questions relating to the conduct of public officers or bodies;
> > (6) questions involving the governmental regulation of public utilities; and
> > (7) questions which must necessarily become moot before the appeal can be heard.

*Dockery*, 559 S.W.2d at 955. Thus, to come within the ambit of the "public interest" exception, the mooted issue must be "one of great public importance, as where it involves a determination of public rights or interest under conditions which may be repeated at any time." *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945). Regarding the "capable of repetition yet evading review" exception, we previously have stated:

The courts invoke the "capable of repetition yet evading review" exception to the mootness doctrine only in exceptional cases. Parties requesting a court to invoke the exception must demonstrate (1) a reasonable expectation that the official acts that provoked the litigation will occur again, (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it reoccurs. A mere theoretical possibility that an act might reoccur is not sufficient to invoke the "capable of repetition yet evading review" exception. Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party."

***Alliance for Native Am. Indian Rights in Tenn., Inc.***, 2005 Tenn. App. LEXIS 284, at \*14 (citations and footnotes omitted).

We find that neither exception is applicable to the present case. Counsel for Rodgers asserted at oral argument that, based upon his personal experience, this issue arises frequently in juvenile cases across the state. Yet, he conceded that he could provide no statistical or other data to support his claim. The record before this Court does not establish the frequency with which the juvenile courts fail to conform their orders to the rule set forth in the Appendix to the Tennessee Rules of Juvenile Procedure. "Thus, we have no way to determine whether the issues in this case are of great importance to the administration of justice or whether cases like this will occur again and evade effective judicial review." ***McIntyre***, 884 S.W.2d at 138. Further, while the repetition of the unlawful act may not have to occur to a particular plaintiff before it will apply in a given case, ***see State ex rel. McCormick v. Burson***, 894 S.W.2d 739, 742–43 (Tenn. Ct. App. 1994) (citing ***Doe v. Madonna***, 295 N.W.2d 356, 361 (Minn. 1980)), we have held cases to be moot on appeal when an incarcerated person is unconditionally released from confinement, ***see, e.g., McIntyre***, 884 S.W.2d at 137–38.

We are powerless to grant Rodgers the relief he sought in his petition, as he no longer can be incarcerated for the delinquent acts he committed as a juvenile. Rodgers has been released from custody during the pendency of this appeal. While counsel for Rodgers noted at oral argument that Rodgers remained subject to supervision following his release and could conceivably face re-incarceration during that period of time, Rodgers attained his nineteenth birthday on May 9, 2006. Upon reaching this milestone, he no longer faces the risk of future incarceration for his juvenile offenses. *See* TENN. CODE ANN. § 37-1-103(c) (2005) (noting that the jurisdiction of the juvenile court, absent other dispositions not applicable here, will continue until the child reaches the age of nineteen); ***see also id.*** § 37-1-131(a)(4) (stating that, if the juvenile court deems a child to be a delinquent child, the court may "commit the child to [DCS], which commitment shall not extend past the child's nineteenth birthday"). Thus, this is not an instance where the injured party could be subjected to further confinement in the future if an exception to the mootness doctrine were not

applied.  ***Cf. State ex rel. McCormick***, 894 S.W.2d at 743; ***In re Judicial Hospitalization of Helvenston***, 658 S.W.2d 99, 101–02 (Tenn. Ct. App. 1983).

Further, counsel for Rodgers suggests that these types of cases necessarily will become moot before effective appellate review can be realized.  We disagree.  This is not an issue which necessarily becomes moot before an appellate review of such cases can be conducted.  ***Cf. Roe v. Wade***, 410 U.S. 113, 125 (1973) (noting that a pregnancy necessarily will come to term before the appellate process can be completed).  The legislature provides as follows:

> The juvenile court shall be a court of record; and any appeal from any final order or judgment in a delinquency proceeding, filed under this chapter, . . . may be made to the criminal court or court having criminal jurisdiction that shall hear the testimony of witnesses and try the case de novo . . . . The appeal shall be perfected within ten (10) days, excluding nonjudicial days, following the juvenile court's disposition.  If a rehearing of a matter heard by a referee is not requested or provided pursuant to § 37-1-107(e), the date of the expiration of the time within which to request rehearing shall be the date of disposition for appeal purposes, and the parties and their attorneys shall be so notified by the referee.  If there is a rehearing by the judge, the appeal period shall commence the day after the order of disposition is entered.

TENN. CODE ANN. § 37-1-159(a) (2005).[8]  "When an appeal is taken from a juvenile court's decision that involves the . . . deprivation of a child's liberty as the result of a finding that such child engaged in criminal activity, such hearing shall be held within forty-five (45) days of receipt of the findings and reports."  ***Id.*** § 37-1-159(c).  "Appeals from an order of the criminal court or circuit court pursuant to this subsection (c) may be carried to the court of appeals as provided by law."  ***Id.***  Rule 13 of the Rules of the Court of Appeals of Tennessee permits the parties to stipulate to having the appeal heard on an accelerated basis, which thereby allows this Court to exercise its discretion under Rule 2 of the Tennessee Rules of Appellate Procedure to suspend certain rules governing appeals to this Court.  Thus, the legislature and this Court afford juveniles protection in the form of an

---

[8] Rodgers did not appeal the juvenile court's decision pursuant to the aforementioned statute.  Instead, he chose to challenge that decision under the Juvenile Post-Commitment Procedures Act after his time for appeal under the statute expired.  *See* TENN. CODE ANN. § 37-1-302 (2005) (noting that a juvenile may avail himself or herself of the protections afforded under the Act after the time for appeal under section 37-1-159 of the Tennessee Code has expired).  The juvenile court entered the order committing Rodgers to the custody of DCS on June 2, 2004.  Rodgers did not file his petition under the Act until December 8, 2004, further delaying appellate review of his case.

expedited review of their cases, and we cannot say that these provisions will operate to deny effective review in similar cases before the juvenile reaches his or her nineteenth birthday.[9]

Finally, the parties in the present case concede that the juvenile court failed to conform its oral directive, which served as the basis for Rodgers' incarceration, to the requirements set forth in the Appendix to the Tennessee Rules of Juvenile Procedure. Thus, we are not asked to construe the rule, and the parties do not assert that any ambiguity exists therein. To render an opinion in this case would, in essence, require this Court to take one of the following courses of action: (1) enter an opinion reaffirming that the juvenile courts of this state must follow the Tennessee Rules of Juvenile Procedure when entering orders committing juveniles to the custody of DCS, or (2) enter an opinion discussing the applicable rule in light of any theoretical or hypothetical factual situations that may arise involving the rule in the future. "The courts of this State have no right to render an advisory opinion." *State ex rel. Lewis v. State*, 347 S.W.2d 47, 48 (Tenn. 1961). Accordingly, we must decline the invitation to do so in this case.

### III.
#### CONCLUSION

We hold that the present appeal is no longer justiciable under the doctrine of mootness. Further, we have determined that this case does not fall within one of the recognized exceptions to the mootness doctrine. Accordingly, the present appeal is dismissed. Costs of this appeal are to be taxed to the Appellant, Tino V. Rodgers, for which execution, if necessary, may issue.

_____
ALAN E. HIGHERS, JUDGE

---

[9] Additional protection is afforded to juveniles drawing nearer to their nineteenth birthday. The legislature provides that, if a chid is "within six (6) months of the child's eighteenth birthday at the time of the adjudication of the child's delinquency, the commitment may be for a *determinate* period of time but in no event shall the length of the commitment be greater than the sentence for the adult convicted of the same crime, *nor shall such commitment extend past the offender's nineteenth birthday*." TENN. CODE ANN. § 37-1-137(a)(1)(B) (2005) (emphasis added).