FILED
12/10/2025
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 3, 2024 Session

## GARY WYGANT, ET AL. v. BILL LEE, GOVERNOR, ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 22-0287-IV**
**Russell T. Perkins, Chancellor; J. Michael Sharp, Judge; and**
**Steven W. Maroney, Chancellor**

———————————————————

**No. M2023-01686-SC-R3-CV**

———————————————————

DWIGHT E. TARWATER, J., concurring in part and dissenting in part.

I join in the majority's insightful analysis of Tennessee's constitutional standing doctrine building upon the principles articulated in *Case v. Wilmington Trust, N.A.*, 703 S.W.3d 274, 286–92 (Tenn. 2024). I quite agree with the majority that the claims we decide today are "quintessential" public rights cases and the three-part test of *City of Memphis v. Hargett*, 414 S.W.3d 88, 98 (Tenn. 2013), applies to the standing issues in both cases. I agree that Ms. Hunt does not meet this test and has no constitutional standing to pursue her claims. I also agree that Mr. Wygant's challenge to the House map does not present a nonjusticiable political question and that he has no standing to challenge the entire House map.

I write separately because I differ with the majority that Mr. Wygant has carried his burden to establish standing to challenge House District 79. I respectfully disagree that Mr. Wygant has demonstrated a "distinct and palpable" injury in fact that would establish the justiciability of his claim. *Id.* (quoting *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006)). As the majority accurately states, an injury in fact cannot be "conjectural, hypothetical, or based on an interest shared by the general public." *Id.* (quoting *Darnell*, 195 S.W.3d at 620). The injury claimed by Mr. Wygant is exactly that—conjectural, hypothetical, and based on an interest shared by the 50,429 residents of Gibson County.

Mr. Wygant has the burden to establish the justiciability of his claim. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (stating that "[t]he party invoking . . . jurisdiction bears the burden of establishing [the] elements" of standing (first citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); and then citing *Warth v. Seldin*, 422 U.S. 490, 508 (1978))). Let's examine the record in this case. Mr. Wygant has lived in Gibson County since 2015 and has always been a registered voter in District 79. Mr.

Wygant believes the split of Gibson County into District 79 and District 82 was a "big change" and is mainly concerned with the fracture of representation from the east and west of Gibson County in the State House. And because Gibson County is now split into two districts, no single representative can represent all of Gibson County. This, according to party chairman Wygant, led him to the rather unremarkable claim that his constituency was unsure which of its two representatives to contact for countywide issues. Mr. Wygant does not allege specific facts as to how this "big change" has actually led to less effective representation. *See Wilmington Tr.*, 703 S.W.3d at 283 (stating that an injury in fact must be "actual or imminent, not conjectural or hypothetical" (quoting *Lujan*, 504 U.S. at 560)).

Oddly enough, the State conceded that Mr. Wygant is injured by the Gibson County split. Perhaps that concession led the majority to decide this issue in favor of Mr. Wygant, although the majority acknowledged that the basis of Mr. Wygant's injury is a "close question." Nonetheless, the State's ill-advised concession does not affect the analysis as constitutional standing can be evaluated at any stage in litigation. *See McKay v. State*, 706 S.W.3d 338, 340 (Tenn. 2025); *see also United States v. Hays*, 515 U.S. 737, 742–43 (1995) ("The question of standing is not subject to waiver." (citing *FW/PBS, Inc.*, 493 U.S. at 230–31)).

The majority purports to find an injury in fact arising out of "the denial of a single representative to represent all of Gibson County," framing the issue as one of representational harm. The majority assumes this inherently changes the quality of Mr. Wygant's representation. Certainly the denial of a single representative to represent all of Gibson County *could* lead to an injury in fact, but there is nothing in the record to show that it did. If something "could" happen, it is not "actual or imminent" but rather "conjectural or hypothetical." *Wilmington Tr.*, 703 S.W.3d at 283 (quoting *Lujan*, 504 U.S. at 560).

In support of its holding, the majority mainly relies on racial and partisan gerrymandering cases from the United States Supreme Court. *See Hays*, 515 U.S. at 739; *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 263 (2015); *Gill v. Whitford*, 585 U.S. 48, 49 (2018). The representational harms in racial gerrymandering cases are uniquely real and unconscionable. Those cases found sufficient allegations of unequal treatment under the law due to discriminatory conduct because the "redistricting legislation [was] so bizarre on its face that it [was] 'unexplainable on grounds other than race.'" *Shaw v. Reno*, 509 U.S. 630, 644 (1993) (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). It is this unequal treatment that harms individuals. "[T]he resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." *Hays*, 515 U.S. at 744 (citation modified) (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)). These harms "include being 'personally . . . subjected to [a] racial classification' . . . as well as being represented by a legislator who believes his 'primary obligation is to represent only the

members' of a particular racial group." *Ala. Legis. Black Caucus*, 575 U.S. at 263 (citation modified) (first quoting *Bush v. Vera*, 517 U.S. 952, 957 (1996); and then quoting *Shaw*, 509 U.S. at 648). The unequal and immoral treatment of citizens as a result of racial discrimination is a far cry from Mr. Wygant's "big change."

Likewise, the harm resulting from partisan gerrymandering claims "arises from the particular composition of the voter's own district, which causes his vote—having been packed or cracked—to carry less weight than it would carry in another, hypothetical district." *Gill*, 585 U.S. at 67. Mr. Wygant does not claim that District 79 was "packed or cracked." *Id.* And there is not a shred of evidence to support such a claim.

The majority then turns to a Texas Supreme Court case, *Abbott v. Mexican American Legislative Caucus, Texas House of Representatives*, 647 S.W.3d 681 (Tex. 2022), which is easily distinguishable. In *Abbott*, the Texas Supreme Court found that because the population of Cameron County alone could support two full districts, Cameron County residents suffered an injury in fact when the county was only allotted one district wholly contained within Cameron County. *Id.* at 687, 693. In short, Cameron County, the southernmost county in Texas, got one countywide representative when its population supported two. *Id.* at 687. As a result, Cameron County residents suffered classic "representational dilution." *Id.* at 693. But here, Gibson County's population falls short of the total population needed for even one House district. Unlike the citizens of Cameron County, Texas, Mr. Wygant has no valid claim of "representational dilution."

So, what then is Mr. Wygant's particularized injury in fact? He does not allege that Gibson County residents' votes have been diluted. His vote carries the same weight now as it did before the split and the same weight it would carry in a hypothetical, unsplit district. There are no allegations of racial or partisan gerrymandering. Mr. Wygant has not been treated unequally under the law. There is no allegation or evidence that District 79 Representative Martin believed his primary obligation was to the constituents in Carroll and Henderson counties, ignoring Gibson County.[1] And Mr. Wygant's claim that he does not know who to call for countywide issues is lackluster, indeed. Not once does he describe a specific instance or issue that created confusion about which representative to call. Not once does he claim any specific harm to him or to his party because either of the two Gibson County representatives somehow failed him or his constituency. A county split, without more, does not amount to "representational harm." Without an allegation or evidence of an injury in fact, his injury remains "conjectural" and "hypothetical." *See Darnell*, 195 S.W.3d at 620.

---

[1] District 79 does not contain a full county. *See* Tenn. Code Ann. § 3-1-103 (2022). District 79 contains parts of Gibson, Carroll, and Henderson counties. *Id.*; *see Tennessee House District 79*, Tenn. Comptroller of the Treasury (2022), https://comptroller.tn.gov/content/dam/cot/pa/documents/district-maps/tn-house-districts/HouseDistrict79.pdf.

Certainly, the reapportioned House map changed Gibson County's representation, along with numerous other counties. *Compare* Tenn. Code Ann. § 3-1-103(c)(1) (2012) (providing that District 79 contains the entirety of Gibson County and parts of Carroll County), *with* Tenn. Code Ann. § 3-1-103(c)(1) (2022) (redistricting District 79 to include parts of Gibson, Carroll, and Henderson counties). But this does not confer standing on every voter of Gibson County. Mr. Wygant's claim that the county split caused him "representational harm" is perhaps a claim of *legal* injury, but simply falls short of the distinct, palpable, and particularized injury in fact that would satisfy our public rights standing requirements. *See Wilmington Tr.*, 703 S.W.3d at 291. Our three-part constitutional standing test in public rights cases should be applied strictly. Otherwise, our courtroom doors will be open to a "profusion of lawsuits," frustrating the purpose of our standing doctrine. *See Darnell*, 195 S.W.3d at 620 (citing *Parks v. Alexander*, 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980)).

Because Mr. Wygant has not shown that he has suffered an injury in fact, there is no need to reach the merits of his claim. *See Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976) ("[Standing] is used to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action."). Mr. Wygant's district-specific challenge to the House plan should be dismissed for lack of standing. Therefore, I respectfully dissent.

_____
DWIGHT E. TARWATER, JUSTICE